**UNITED STATES of America**

v.

**Daniel HOUSER, Appellant.**

**No. 83–2287.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 13, 1984.

Decided Oct. 19, 1984.

Timothy Neilson Black, Washington, D.C. (appointed by this Court), for appellant.

John Philip Dominguez, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton and Robert Richard Chapman, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee. Terence J. Keeney, Asst. U.S. Atty., Washington, D.C., also entered an appearance for appellee.

Before MIKVA, GINSBURG and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

Appellant Daniel Houser was convicted, following a jury trial, of possession of a firearm in violation of 18 U.S.C.App. § 1202(a)(1).[1] At trial, the Government introduced a Bureau of Alcohol, Tobacco and Firearms (BATF) tracer form to show the weapon's movement in or connection with interstate commerce—a statutory element of the offense with which Mr. Houser was charged. The form was admitted into evidence over defense objections that it was inadmissible hearsay. The propriety of the District Court's admission of that form constitutes the pivotal issue in this appeal.

On appeal, Mr. Houser contends that the trial court erred in three separate respects: (1) use immunity should have been granted to a prospective defense witness; (2) the BATF tracer form should not have been admitted; and (3) evidence as to the existence of a second weapon in appellant's possession, which came in during the Government's cross-examination of appellant, should have been excluded. Upon careful review of the record in this case and the applicable law, we agree with ap-

---

1. 18 U.S.C.App. § 1202 reads in pertinent part:
(a) Any person who—
  (1) has been convicted by a court of the United States or a court of any State or any political subdivision thereof of a felony

and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

pellant's second contention and for that reason are constrained to reverse his conviction. Accordingly, we do not reach the other two arguments advanced on appeal.

## I

The facts of this case are not in dispute. On July 1, 1983, BATF agents, pursuant to a warrant, conducted a search of the defendant's house in the District of Columbia.[2] BATF Special Agent Pederson searched Mr. and Mrs. Houser's bedroom closet, where he found a Revelation model, .410 gauge shotgun and a quantity of .410 shotgun ammunition. A twelve gauge shotgun was also found, in a hall closet. The .410 gauge shotgun was not in ready condition. Indeed, the weapon could not be fired in the usual manner but could be so employed only by pulling back the hammer or if the trigger were activated through a manipulation of the hammer in conjunction with the trigger mechanism. The twelve gauge shotgun was in a state of some considerable disrepair, inasmuch as it was in two pieces and was missing several parts, including the trigger mechanism.

Special Agent Pedersen initiated a trace of the .410 shotgun by providing, over the telephone, the weapon's serial number, model and make to an employee in BATF's tracing section. According to Mr. Pedersen's testimony, the tracing center employee would have recorded this information and then contacted the manufacturer by telephone to obtain information with respect to the manufacture, shipment and sale of the weapon. That information, provided entirely over the telephone by an

unidentified employee of the manufacturer, was recorded on BATF form 7520.5. The form, as filled out, indicated that after its manufacture in Massachusetts the weapon was shipped to a retailer in Maryland and sold to a Maryland resident (not Mr. Houser). No trace was reported on the twelve gauge shotgun, and Mr. Houser was subsequently charged only with possession of the .410 shotgun.

Mr. Houser's defense was simple and straightforward, namely that the .410 shotgun did not belong to him at all. He claimed, rather, that the weapon was being stored in his home for a friend, a Mr. Richardson; that the friend had told him that the gun was inoperable; and that he (Mr. Houser) believed the weapon to be inoperable. The defendant, through counsel, indicated that he wished to present that defense through Mr. Richardson's testimony. Noting that the firearm was unregistered in the District of Columbia and that Mr. Richardson's testimony could therefore lead to his own prosecution, the District Court appointed independent counsel to advise the prospective witness. After conferring with counsel, Mr. Richardson declined to testify, asserting his Fifth Amendment privilege against compelled self-incrimination.

Faced with the loss of what is considered to be exculpatory evidence, the defense requested the District Court to grant Mr. Richardson judicially ordered use immunity and compel his testimony. Such a grant would have allowed the witness to testify while guaranteeing that his testimony could not serve as the basis for his possible future prosecution.[3] The court denied the

---

**2.** Mr. Houser had resided in that house with his wife, children and grandchild for nine years at the time of the search. The 1969 felony conviction that brought Mr. Houser within the scope of 18 U.S.C.App. 1202(a) was for robbery. He served five years of a 15 year sentence. *See* Appellee's Brief at 4. According to the trial judge's comments at appellant's sentencing proceeding, Mr. Houser had been an alcoholic before his incarceration 15 years ago, but while in prison started an Alcoholics Anonymous group and otherwise comported himself properly. He also learned a trade in prison which enabled him to support his family, and he had been

gainfully employed and had committed no offenses since 1977. *See* Transcript of Sentencing at 17–18.

**3.** Use immunity is, of course, to be distinguished from transactional immunity. A grant of transactional immunity guarantees that the grantee will not be prosecuted for the actions about which he testified. Use immunity, however, guarantees only that the immunized testimony, and any evidence derived from that testimony, will not be employed in prosecuting the grantee. The witness may therefore still be

defense request, but it is unclear from the record whether the denial was based on an understanding or belief on the part of the District Judge that the court had no power to grant such a request or, alternatively, on the theory that, while the court could do so as a matter of law, a grant was nonetheless inappropriate in the case at hand. *See* Trial Transcript (Tr.) at 116.

Quite apart from the issue of use immunity for Mr. Richardson, the Government at trial had the burden of proving a nexus between the .410 shotgun and interstate commerce. The Government attempted to meet that burden through the testimony of Special Agent Pedersen and by offering as evidence the BATF tracer form 7520.5, prepared as we have seen by an unidentified BATF clerk. The prosecutor first briefly questioned the agent as to his personal knowledge of where the weapon was manufactured. According to Mr. Pedersen's testimony in this respect, which comprised quite literally less than one page of the trial transcript, the gun was manufactured at the Massachusetts facility of the Savage Firearms Company.[4] The agent was then questioned at length regarding the BATF tracing procedure and the information resulting from the trace. Indeed, in contrast to Agent Pedersen's testimony based on his own knowledge about the manufacturer, approximately six pages of transcript on direct examination, *see* Tr. at 89–93, 119–20, and one page on cross-examination, *see*

Tr. at 120–21, were devoted entirely to the BATF trace.[5]

From the first mention at trial of the BATF trace, the defense vigorously objected to the admission of any evidence resulting from that trace, arguing that it constituted inadmissible hearsay. *See* Tr. at 86, 93–94. Electing to stand on the BATF form,[6] the prosecution argued that the form and the information thereupon, while hearsay, were admissible under the business records exception to the hearsay rule. *See* Tr. at 86, 94. The sole foundation laid by the Government for the admission of the form was the testimony of Special Agent Pedersen regarding BATF tracing procedures, the fact that he had initiated, by telephone, a request for a trace, and that he had received the 7520.5 form in the mail in response to his request. The unidentified BATF clerk who phoned the manufacturer and filled out the form was not produced. Neither was the person at the manufacturer's office, who supplied the information, produced or identified.

The issue of the admissibility of the BATF form 7520.5 was argued below at the bench but the matter was not briefed. While the District Judge admitted the form into evidence, she candidly recognized that it posed admissibility problems. Indeed, the court expressly noted the weakness of this evidence at the time of admission. *See* Tr. at 94 ("It's certainly not the best evidence."); Tr. at 95 ("I don't think ... you have done the best possible job in proving a

---

prosecuted and evidence independent of his immunized testimony may be presented at trial.

4. The testimony was as follows:
   Q: Sir, during the course of your tenure in the past fifteen years as a Special Agent for the Treasury Department, Alcohol, Tax and Tobacco Bureau [sic], have you had occasion to become familiar with manufacturers of weapons in the United States?
   A: Yes, I have.
   Q: And are you familiar with the particular manufacturer that manufactured this weapon?
   A: Yes, I am.
   Q: And which manufacturer is that?
   A: Savage.
   Q: And where is Savage Manufacturing Company? Is that the full name, Savage?

A: Yes. Savage Firearms Company. They are located in Springfield, Massachusetts.
   Q: Do they—is that where this weapon was manufactured, to your knowledge?
   A: Yes. They only have one plant, and this Revelation is one of the models that Savage puts out.
   Tr. at 88–89.

5. The cross-examination occurred after the 7520.5 form was admitted into evidence over defense objection.

6. The Government indicated that it had another, unidentified witness available, *see* Tr. at 116, but did not call that witness, apparently because the form had been admitted.

necessary element."); Tr. at 117 ("I didn't think that was the best evidence.... I thought that you didn't have the best evidence, because that is an element of the offense.... I still didn't think it was the best evidence.") (after having admitted the form). The issue arose again when the defendant moved for acquittal on the ground that the Government had failed to prove any nexus with interstate commerce. In response, the prosecution argued solely that the BATF form, over which the admissibility controversy had previously raged, satisfied the burden of proof with respect to this element of the offense.[7] The court denied the motion, stating: "I let in the evidence. So, I guess I would have to deny the motion, but it is weak." Tr. at 139.[8]

Upon retiring, the jury had considerable difficulty in reaching a verdict. A straightforward case that had taken just under two days to try was followed by an almost equal time for deliberation, even though the case did not involve matters of substantial factual or legal complexity. At the end of the first full day of deliberation,[9] the jury reported that it could not reach a verdict at that time and adjourned over the weekend. After further deliberation on Monday morning, the foreman reported to the District Judge that the jury was unable to come to a unanimous decision, that no further deliberation would help and accordingly asked the court for further instruction. The court thereupon delivered an additional instruction (a modified "Allen charge")[10] and asked that deliberations continue. After several hours of further deliberation, the jury reached a unanimous verdict finding the defendant guilty of the offense charged.

## II

### A

As we have already observed, one of the statutory elements of a violation of 18 U.S. C.App. § 1202(a) is that the accused receive, possess or transport a firearm in commerce or affecting commerce. The Supreme Court explained that element in *Scarborough v. United States*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), in

---

7. No reference whatever was made to the very brief testimony of Agent Pedersen as to his knowledge of the place of manufacture.

8. The prosecution also attempted twice to have evidence as to the existence of the second shotgun admitted in order to show the defendant's intent and knowledge with regard to the crime charged. Each time, the court refused to admit the evidence, but left open the possibility of its later admission. *See* Tr. at 58, 84. The existence of the second weapon finally came to the surface when the defendant took the stand. On cross-examination, the prosecutor asked Mr. Houser how many weapons Mr. Richardson had brought to the house. When Mr. Houser replied that only one had been brought, the prosecutor introduced the defendant's earlier inconsistent statement to his parole officer that he was keeping two shotguns for a friend. The statement was admitted, over objection, to impeach the defendant's credibility as a witness. Once introduced, the existence of the second shotgun was explored more fully both on cross-examination and on redirect, *see* Tr. at 159–71, 174–76, and the weapon itself was introduced by the defense to show its inoperability. A limiting instruction was offered, but it was rejected by the defense. *See* Tr. at 174. We do not, as we previously indicated, need to reach the issue of the propriety of allowing in this evidence.

9. The deliberations began in the afternoon of the last day of testimony. The next day, the "first full day," was actually a day shortened due to a medical appointment for the jury foreman.

10. The additional instruction was as follows:

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself but do so only after an impartial consideration of the evidence with your fellow jurors.

In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced that your opinion is erroneous. But do not surrender your honest convictions as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

You are not partisans. You are judges, judges of the facts. Your sole interest is to ascertain or determine the truth from the evidence in the case.
Tr. at 282–83.

holding that, for a possession offense, the firearm need merely have travelled in interstate commerce at some time prior to the possession.

The Government offered BATF form 7520.5 in its effort to establish the required nexus between the .410 gauge shotgun and interstate commerce. The defense objected that the form was hearsay. The Government argued in response that the form was admissible as a business record. The District Court agreed with the prosecution, albeit with little enthusiasm, and admitted the form.

The only case we have found directly on point is the Fifth Circuit's decision in *United States v. Davis*, 571 F.2d 1354 (5th Cir.1978). In that case, the trial court had ruled that BATF forms 7520.4 and 7520.5, the form in question here, were inadmissible under the public records exception, Fed. R.Evid. 803(8), but admitted them under the business records exception, Fed.R.Evid. 803(6).[11] On appeal, the Fifth Circuit agreed that the BATF forms were inadmissible as public records *but found reversible*

error in admission of the forms as business records.

Writing for the court, Judge Tjoflat stated squarely and unequivocally:

> [O]ur reading of the rule [803(6)] precludes the treatment of form F7520.4 as a record of regularly conducted activity of the Bureau [BATF] .... [The] statement, though a "report," was not "made at or near the time" of the "acts or events" reported, i.e., the manufacture, sale and shipment of the [weapon]; it is not shown that the report was made "by, or from information transmitted by, a person with knowledge" of these "acts or events" and was "kept in the course of a regularly conducted business activity [of BATF]"; and it was not "the regular practice of [BATF's] business activity to make the ... report." In short, the report does not meet the rule 803(6) criteria.

*United States v. Davis, supra,* 571 F.2d at 1360.[12]

We have found no other case in conflict with the Fifth Circuit's well reasoned decision in *Davis,*[13] which we note had been on

---

**11.** The rule states:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> .    .    .    .    .
>
> (6) *Records of regularly conducted activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

FED.R.EVID. 803(6).

**12.** While the discussion was of form 7520.4, both forms were held inadmissible under the 803(6) exception. Furthermore, the Fifth Circuit would have to apply its analysis *a fortiori* to

form 7520.5, since the two contain similar information and 7520.5 is compiled by the BATF from information received over the telephone, while 7520.4 is filled out and signed by the manufacturer's historian.

**13.** The Government seeks to distinguish *Davis* by suggesting that the court in that case "[a]pparently [had] not ... been cited to the applicable recordkeeping requirements" set forth in 27 C.F.R. § 178.121 *et seq.* and that the questions raised in the Fifth Circuit's opinion "are answered by reference to the regulations." Appellee's Brief at 25 n. 15. The Government parses the opinion in *Davis* too closely. The portion of Judge Tjoflat's discussion relied upon so heavily by appellee expressly goes, rather, to deficiencies in the foundation laid for the form in question (F7520.4) *in addition to* those fundamental admissibility flaws already enumerated by the court. The fact that the manufacturer was required under governing regulations to create and maintain certain underlying records is simply not dispositive of the issue whether governmental forms purporting to embody such original information satisfy the business records exception. Moreover, in stark contrast to the situation before us, the records in question in *Davis* reflected the identity of the manufacturer's custodian of records and indeed Form

the books for five years at the time the prosecution in this case elected to rely upon the form in question. To the contrary, the Sixth Circuit, while not ruling directly on this point, has expressed views compatible with those embraced by Judge Tjoflat in *Davis*. In *United States v. Day*, 476 F.2d 562 (6th Cir.1973), the issue arose over the right of a BATF Special Investigator to base his testimony on information found in a document prepared by the historian of a firearms manufacturer and from a mid-trial telephone conversation with the BATF office regarding dates of manufacture and shipping, information which resulted from the investigation conducted under the agent's supervision. The court found it unnecessary, however, to address the hearsay question, because the testimony was aimed at establishing a fact which in the court's view was not a necessary element of a violation of 18 U.S.C.App. § 1202(a), *see infra* note 20. However, the court did question whether the business records exception would justify the admission of an oral statement of a telephoned report.

In another case, *United States v. Veytia-Bravo*, 603 F.2d 1187 (5th Cir.1979), *cert. denied*, 444 U.S. 1024, 100 S.Ct. 686, 62 L.Ed.2d 658 (1980), on which the Government places considerable reliance, BATF records were admitted into evidence, but there the records were the *original records* compiled by a retailer, which had gone out of business. In compliance with applicable law, the dealer forwarded its records to the BATF, which then became the custodian of the records. *Veytia-Bravo*, which was decided by the Fifth Circuit

after *Davis* was handed down and without in any fashion questioning the soundness of that earlier decision, is thus a far cry from the case at hand.

█ Applying the Fifth Circuit's analysis to the specific circumstances of this case, where the indicia of reliability were so woefully lacking, we hold that the BATF form 7520.5 should not have been admitted as a business record. As discussed above, neither the BATF tracing section clerk nor the manufacturer's employee was even identified, much less produced. In addition to the usual chance of error in recording a business record, there were clear chances of error in passing the weapon's serial number from the Special Agent to the BATF clerk and then on to the manufacturer's employee; compounding those possibilities was the possibility of error in the manufacturer's employee's recovery of the information sought, and in the BATF clerk's subsequent recording of that information on the form.

The very language of the business records exception to the hearsay rule supports our conclusion. To be admissible, business records must be authenticated "by the testimony of the custodian or other qualified witness," Fed.R.Evid. 803(6). Even then there is a qualification. The records are admissible, "unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." *Id.* The actual records of the manufacturer, properly authenticated, would clearly have been admissible.[14] We simply can not find proper authentica-

F7520.4 was filled out and signed by the manufacturer's custodian. Here, the identity of both the BATF clerical employee and the manufacturer's employee in Massachusetts remain entirely enshrouded in mystery.

14. The appellee's brief cites various federal regulations that support this conclusion. *See* Appellee's Brief at 22–23 & n. 13. The pertinent regulations, 27 C.F.R. § 178.121 *et seq.* (1984), clearly spell out the recordkeeping duties placed on the manufacturers of firearms. Those regulations, and the penalties that attach to noncompliance, are circumstances that speak to trustworthiness and reliability of the manufacturer's original records. However, the regulations cit-

ed do not speak to the reliability of the BATF form in question.

We leave open the possibility that, under the right circumstances, a BATF tracer form might be admissible. At the same time, we recognize the possible applicability of *Palmer v. Hoffman*, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), and its progeny, to this case. However, under our approach, we need not decide whether BATF tracer forms are prepared not in the regular course of business but rather with an eye toward litigation and are thus inadmissible under *Palmer*. We rely on the specific circumstances of this case and leave the broader question unresolved.

tion in the case before us and, on the other hand, do perceive clear indications of a lack of trustworthiness.

■ While a finding of error in the admission of the BATF form could be based purely on the failure of the form and procedure to meet the requirements of Fed.R. Evid. 803(6), our concerns run deeper than slavish adherence to the technical intricacies of the rules of evidence. This is, of course, a criminal case, where the defendant enjoyed the protection of the Sixth Amendment's Confrontation Clause. It is a "truism that 'hearsay rules and the Confrontation Clause are generally designed to protect similar values.'" *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980) (quoting *California v. Green*, 399 U.S. 149, 155, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489 (1970)). Nonetheless, even in criminal cases, hearsay evidence can, under certain exceptions, be admitted because the particular "exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.'" *Id.* (quoting *Mattox v. United States*, 156 U.S. 237, 244, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895)). Inasmuch as constitutional values are implicated, the "'circumstantial guarantees of trustworthiness' justif[ying] departure from the general rule excluding hearsay"[15] should therefore be closely examined.

Here, an examination of the procedures followed in compiling the BATF form leads inexorably to substantial concern over the total lack of "indicia of reliability"[16] and "circumstantial guaranties of trustworthiness." That uneasiness is compounded by the fact that the specific requirements of the business records exception, requirements designed to assure that reliability and trustworthiness, were not met.

Failure to meet those requirements was deemed sufficient for this court, in *United States v. Kim*, 595 F.2d 755 (D.C.Cir.1979), to hold that a telex, offered by a defendant to show the existence of a bank deposit, was inadmissible. The telex did not meet the business records exception, the court found, because it was not made at or near the time of the event; to the contrary, the telex was prepared two years after the deposit. Moreover, the document was not prepared in the regular course of business but in response to a subpoena of bank records. In both *Kim* and the case at hand, the information was taken from records made at or near the time of the event and was sent in response to a government request. In *Kim* the evidence was offered against the Government; here it was admitted against the defendant. Where, as here, the evidentiary considerations of *Kim* are exacerbated both by the specific lack of reliability and the presence of Confrontation Clause considerations, the BATF form simply cannot be found admissible.

For those reasons, like the Fifth Circuit before us, we find error in the admission of the BATF tracer form.

### B

■ Having concluded that there was error, we must nonetheless determine whether that error was prejudicial. The Government vigorously asserts that, even if admission of the form constituted error, the error was harmless, because the information on the form was merely cumulative of Special Agent Pedersen's testimony based on his personal knowledge. Appellee's Brief at 26. After canvassing the entire record here, we are constrained to reject that contention.

First, it is not at all clear that the agent's "personal knowledge" was independent of the information on the form. The first time Special Agent Pedersen was asked at trial if he had ascertained where the weapon was manufactured, he replied: "Yes. My Bureau did a trace of the firearm." Tr. at 86. When later asked if he was familiar

**15.** McCormick on Evidence § 253 at 753 (E. Cleary 3d ed. 1984) (citing 5 Wigmore Evidence § 1422 (Chadbourn rev. 1974)).

**16.** *Mancusi v. Stubbs*, 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972).

with the manufacturer of the weapon, his response to the effect that he was did not demonstrate that his familiarity was independent of the tracer report. Further, his earlier claim of general familiarity with manufacturers of weapons does not show that his specific familiarity with the manufacturer of the weapon in question was not based solely on the tracer report.[17]

Secondly, and more fundamentally, the agent did not testify at all as to the location of Savage's facilities at the time of the manufacture of this particular weapon. In the precise situation presented here, the Fifth Circuit, speaking through Judge Tjoflat, roundly rejected the contention that error in admitting BATF forms was harmless because it was merely cumulative. There, as here, the agent "did not testify as to when this particular [weapon] was manufactured, nor did he make any attempt to say where [the manufacturer] may have had a plant at that time." *United States v. Davis, supra,* 571 F.2d at 1358 n. 7.

There is yet a third problem with the harmlessness argument. Even if the agent's knowledge were independent of the tracer form and his testimony as to the location of the Savage plant at the time of the manufacture of this weapon were clear, the jury may not have been convinced by his ever so brief testimony in this respect. Given the enormous disparity in time devoted to testimony as to information from the tracer form compared to the time devoted to testimony about the agent's personal

knowledge,[18] any disinclination on the part of a juror to credit the agent's testimony may well have been overborne by reliance on the inadmissible evidence. In any event, it is plain beyond cavil that the prosecution was relying principally, if not exclusively, on testimony about the BATF tracer, as evidenced by the prosecutor's argument in opposing the defendant's motion for acquittal. In that colloquy, as we earlier noted, the prosecutor relied entirely on the BATF form. Our concern, moreover, is highlighted by the substantial difficulty the jury had in reaching a verdict.[19] "A vital factor in deciding whether an error was harmful is the strength of the case against the defendant." *United States v. Baker,* 693 F.2d 183, 189 (D.C.Cir.1982). The jury's difficulty in reaching a decision strongly suggests that, under the specific circumstances of this trial, the error cannot be dismissed as harmless.

For the reasons stated,[20] we find prejudicial error in the admission into evidence of the BATF tracer from 7520.5 and, accordingly, reverse the appellant's conviction.[21]

*Reversed.*

---

17. The relevant part of Special Agent Pedersen's testimony is set forth *supra* at note 4.

18. *See supra* notes 4 & 5 and accompanying text.

19. *See supra* text at notes 9 & 10.

20. In our research, we have identified a line of cases in the Fifth and Sixth Circuits holding that proof that a weapon was manufactured in one state and possessed in another is sufficient to show transportation in interstate commerce. *See United States v. Garrett,* 583 F.2d 1381 (5th Cir.1978); *United States v. Wilson,* 569 F.2d 392 (5th Cir.1978); *Watkins v. United States,* 564 F.2d 201 (6th Cir.1977), *cert. denied,* 435 U.S. 976, 98 S.Ct. 1626, 56 L.Ed.2d 71 (1978); *United States v. Jones,* 533 F.2d 1387 (6th Cir.1976),

*cert. denied,* 431 U.S. 964, 97 S.Ct. 2919, 53 L.Ed.2d 1059 (1977); *United States v. Day,* 476 F.2d 562 (6th Cir.1973); *United States v. Austin,* 99 F.R.D. 292 (W.D.Mich.1983).

Since we have found admission of the tracer evidence to be prejudicial error under the particular facts of this case, because of its potential to confuse a troubled jury, we need not now decide whether to follow the Fifth and Sixth Circuit position. That matter remains fully open for this Circuit's consideration and decision in an appropriate case.

21. Having reversed the appellant's conviction for error in the admission of the BATF form, we do not reach the two other issues presented— the denial of judicial use immunity to the prospective defense witness and the admission of evidence as to a second, inoperable weapon.