George WALKER, Richard Kapachinski, and Charles E. Kapachinski, Appellants,

v.

STATE of Indiana, Appellee.

No. 684S237.

Supreme Court of Indiana.

Feb. 9, 1987.

William F. Carroll, Marc H. Donaldson, Crown Point, for George Walker.

James R. Bielefeld, Crown Point, for Richard Kapachinski.

James A. Greco, Greco, Gouveia, Miller, Pera & Bishop, Merrillville, for Charles E. Kapachinski.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Chief Justice.

A trial by jury resulted in a conviction of Burglary, a Class B felony, for each of the appellants. Walker and Richard Kapachinski each received a sentence of eighteen (18) years and Charles Kapachinski received a sentence of twelve (12) years.

The facts are: At approximately 6:00 p.m., on June 18, 1982, officers of the Chi-

cago Police Department began their eighth day of surveillance of Richard Kapachinski, Charles Kapachinski and Frank Esposito. This surveillance was the result of a tip to the Chicago Police Department that Richard Kapachinski and Esposito were committing burglaries in Chicago and Cook County, Illinois. During the course of the surveillance, the officers had repeatedly followed the suspects back and forth across the Indiana-Illinois border.

During surveillance on the day in question, the suspects drove from southern Chicago into Schererville, Indiana, where they parked and waited approximately ten minutes in a location about one block from the scene of the eventual break-in. They then drove to Nick's Bar in Hammond, Indiana, where they sat in their car for a few minutes. Charles Kapachinski and Esposito got into Kapachinski's car. Richard Kapachinski went to Lansing, where he picked up George Walker.

The four men subsequently met at Richard Kapachinski's apartment, from whence they drove to the scene of the break-in. When they arrived at the scene they waited in the car for a few moments, then Richard Kapachinski and Walker went into the front door of the apartment building. Approximately one minute later, a light was turned on in the upstairs apartment, which was one of four condominiums in the building. At that time the car was moved immediately behind the surveillance van occupied by Officer Farrell of the Chicago Police Department.

From his vantage point, Officer Farrell observed Charles Kapachinski and Esposito in the front seat of the car. After about twelve to fifteen minutes, Officer Farrell observed Charles Kapachinski speak into a hand-held radio and return the car to its original location in front of the apartment. Richard Kapachinski and Walker then exited the building carrying objects which they had not carried into the building. The four men then returned to Richard Kapachinski's apartment.

Chicago Police Officer Robert Brown went into the building where he discovered that the second floor security door between the vestibule and the interior of the building had been propped open with a rolled-up paper. When he got upstairs he discovered that the door had been forced open to the apartment from which the light had come. The interior of the apartment had been ransacked. Upon receiving this information, Officer Philip Michaels of the Chicago Police Department went to the Schererville Police Station.

At the station, Michaels met Officer Mitchell. Together they returned to Richard Kapachinski's apartment. While they were en route to the apartment, Michaels was informed by radio that two of the suspects were preparing to leave. He then, with the concurrence of Mitchell, advised the other Chicago police officers to arrest the two suspects who were attempting to leave. Those so arrested turned out to be Walker and Charles Kapachinski. Richard Kapachinski and Esposito were subsequently arrested inside the apartment building.

Jack Shaffner, the estranged husband of Edith Shaffner, was subsequently summoned to the burglarized condominium which was jointly owned by him and his estranged wife. Shaffner verified that property jointly owned by him and his wife was missing from the apartment. He was able to positively identify certain of the seized items as objects which were missing from the residence.

Each of the appellants in this case has filed a separate brief and reply brief; however, due to the similarity of each of the briefs, the State was able to answer each in a single brief. We will attempt to cover each of the points raised by each of the appellants in a similar fashion.

■ Appellants claim the trial court erred in refusing to suppress evidence seized by the Chicago police officers, alleging that the officers had no authority in Indiana; therefore, their search was illegal. There is a statute, Ind.Code § 35–33–3–1, which allows police officers from another state, when they are in fresh pursuit of a

felon, to pursue the felon into Indiana and effect an arrest in this state; however, as pointed out by appellants, that statute is not applicable in this case. All activity concerning the instant crime was perpetrated in Indiana. Under the circumstances, the Chicago police officers had no Indiana police authority. They were strictly operating as citizens in making the arrests in Indiana.

Ind.Code § 35–33–1–4 provides in part:

"(a) Any person may arrest any other person if:

(2) a felony has been committed and he has probable cause to believe that the other person has committed that felony."

The Chicago police officers, although outside their jurisdiction, certainly had authority to effect their arrest under this statute. The statute further provides:

"(b) A person making an arrest under this section shall, as soon as practical, notify a law enforcement officer and deliver custody of the person arrested to a law enforcement officer."

This the Chicago police officers did. In fact they had done so before effecting their arrest and effected the arrest only because as the Indiana police officer was on his way to the scene, two of the subjects took action indicating that they were about to leave the scene. It was only then that the Chicago police officers effected their citizens arrest. It was only moments later that the subjects of the arrest were turned over to the Indiana authorities.

We hold there was nothing illegal concerning the arrest or the search. This case merely reflects proper cooperation between two police departments in neighboring jurisdictions.

■ Appellants argue that it was illegal to seize items from their persons and from two bags in the open trunk of the car at the time they were arrested. An arrest may be made without a warrant when the arresting person has probable cause to believe that a felony has been committed. In effecting such an arrest, the arresting person may also search the area immediately under the arrested person's control. *Farrie v. State* (1971), 255 Ind. 681, 266 N.E.2d 212; *Payne v. State* (1976), 168 Ind.App. 394, 343 N.E.2d 325, *trans. denied.* Such was the situation in the case at bar.

■ Appellants claim the trial court erred in failing to order the Chicago Police Department to produce its files on appellants. The testimony of the Chicago police officers was that no electronic eavesdropping occurred, that no "beepers" were used to follow appellants and that there was nothing in their files concerning an informant. In sum, they testified there was nothing in their file which could be produced pursuant to the request. After hearing this evidence, the trial judge was wholly within his discretion in denying the motion. *Ross v. State* (1980), 274 Ind. 588, 413 N.E.2d 252.

■ Appellant Walker claims the trial court erred in denying in part his motion in limine. In his motion, Walker asked the court to prohibit the State from referring to the fact that appellants had been under prolonged surveillance. After discussion with the parties, the court ruled that he would grant the motion "only to the extent that the prosecution is prohibited from asking why surveillance was being made, so it's granted in part". Thus the court permitted reference to the surveillance but not as to why it was being conducted. The court denied Walker's motion as it asked that the State be prohibited from referring to the material seized at the time of his arrest. As pointed out above, there is ample evidence in this record to support the court's position that the arrest and seizure of evidence was legal.

Walker now complains that the State should not have been permitted to point out that the subjects had been under surveillance for eight days and that eight to nine officers had been so employed each day. He claims that the reference to the surveillance clearly implied that appellants had prior criminal records. The mere fact that there was surveillance was a proper part of the State's case. It explained the presence of the officers and the manner in which

they acquired their preliminary information. The State made no reference to any prior records of appellants.

■ The detail of the surveillance was brought out by cross-examination of the State's witnesses by appellants' attorneys. Under the circumstances, this was a matter of choice for counsel to make and we cannot now say that it was improper. However, the effect of such extended cross-examination did tend to emphasize the surveillance to the jury. This was not a result of the ruling of the trial court on the motion in limine nor a result of the manner of the presentation of the evidence by the State. There was no error in the admission of the evidence of the surveillance as presented by the State.

■ Walker also claims there was prosecutorial misconduct in that in his closing argument the prosecutor referred to appellants as "professional burglars". He claims this reference coupled with the evidence of surveillance constituted reversible error. In making his comment, the prosecutor was not referring to any reason for the surveillance, but was referring to the evidence directly presented in the case at bar relating to the *modus operandi* of appellants. He was not referring to previous acts of appellants but to their conduct in this case. Such comment was proper. *Cox v. State* (1974), 159 Ind.App. 286, 306 N.E.2d 107, *trans. denied.*

■ Appellants claim there is insufficient evidence to support the verdict of the jury. They claim that even though the residence had been broken into, there is no direct evidence that they were the ones who did the breaking. They hypothesize that someone else could have entered the building, broken down the door, loaded the household goods in sacks and left them in the hall and that they merely happened upon the scene and took the sacks from the hall. Under the circumstances above-recited, this hypothesis is nothing short of ludicrous. There is ample evidence in this record to support the verdicts of the jury.

■ Appellants also claim there is no proof of ownership of the property in Shaffner as alleged in the information. It is true that Shaffner and his wife were separated and that there was some confusion as to the exact ownership of some of the items taken in the burglary; however, they were joint owners of the residence at the time of the burglary. Therefore, it is of no moment which of the two persons owned any particular item. Regardless of ownership, all items in the apartment were in their joint possession. Any unauthorized taking of any of the property in the manner described in the evidence in this case would constitute a burglary. *See* Ind. Code § 35–41–1–23(b), which states:

> "Property is that 'of another person' if the other person has a possessory or proprietory interest in it, even if an accused person also has an interest in that property."

*See also Dowdell v. State* (1981), Ind.App., 429 N.E.2d 1.

Appellant Richard Kapachinski claims he was denied a fair trial by reason of the State's introduction of evidence of prior crimes committed by him. There was no evidence of prior crimes introduced concerning this appellant. He bases his entire argument upon the fact that the State was permitted to show that appellants had been under surveillance for several days. As previously discussed in this opinion, this was not tantamount to the presentation of evidence of prior crimes. There was no reversible error in this regard.

Appellant Walker presents a list of allegations of what he calls fundamental errors. First, he states there was a cumulative effect of all of the issues which he has raised in his appeal; however, inasmuch as we find no reversible error in any of his contentions, we of course find no cumulative effect.

■ He also claims the trial court erred in refusing to transfer his case to another judge based upon a local rule; however, the rule is not included in the brief nor is it discussed in any manner which would allow us to pass upon the

supposed violation of the rule. We see nothing in the trial of this case that would require a separation of appellants or the removal of any one of the appellants from the venue of the trial judge. There is no allegation nor is there any showing of any prejudicial conduct on the part of Judge Letsinger.

■ Appellants complain that they were limited to thirty minutes for *voir dire* examination of the jury. No objection was made at the time nor is there any showing of any prejudice occurring during the *voir dire* examination.

■ Walker claims the trial court erred in refusing to grant a new trial based upon the alleged perjury of Jack Shaffner. He bases his allegation on Shaffner's claim that his wife was visiting her sister at the time of the crime. Appellant claims she was in fact in a sanitarium for alcohol rehabilitation at the time. There is no evidence in the record proving her whereabouts or challenging Shaffner's statement. Even if we would assume for the sake of argument that Shaffner deliberately misled the court as to the whereabouts of his wife, such information had absolutely no bearing on the facts of this case. There is not even a remote possibility that Jack Shaffner's statement concerning the whereabouts of his wife could have affected the outcome of this case.

■ Appellant Walker claims the trial court erred in refusing to give his cautionary instruction to the effect that the informant's tip did not include him. Here again, this has nothing to do with the sufficiency of the evidence against Walker. Neither Walker nor his codefendants were tried on the information received by the police by way of a tip. The entire evidence presented by the State was confined to their activity in the perpetration of the burglary. What the police did or did not receive by way of a tip has no bearing in this case.

■ Appellants Walker and Charles Kapachinski claim the trial court erred in considering improper evidence in arriving at a finding of aggravating circumstances.

Walker claims the trial court considered suppressed evidence when it mentioned that radio contact between the burglars was used in the perpetration of the crime. It is his contention that since the trial court suppressed the admission of the radios into evidence that they should not have been considered by the trial judge in assessing the penalty.

The statute setting the guidelines for a judge in assessing an increased sentence do not confine the judge to the evidence heard in the case-in-chief. *See* Ind.Code § 35-4.-1-4-7 (repealed and recodified at Ind.Code § 35-38-1-7). In the case at bar, the use of the radios was in evidence. The fact that the radios themselves were excluded does not preclude the trial court from considering their use in assessing the penalty.

■ Charles Kapachinski complains that one of the aggravating circumstances cited by the trial court in enhancing his sentence was that he had previously been convicted of a felony. He asserts that this was improper as that charge had been overturned at a post-conviction relief hearing in another Lake County court. The record clearly shows that the trial court was well aware that such sentence had been set aside and that the judge setting the sentence aside had then assessed a fine and costs which were suspended. This was a legitimate recitation of the history of that case and was entirely proper for the trial court's consideration in the sentencing of Charles Kapachinski.

The trial court is in all things affirmed.

All Justices concur.