In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-2745

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSEPH C. BROWNLEE,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 3:13-cr-00011-RLM-CAN-1 — **Robert L. Miller, Jr.**, *Judge.*

ARGUED JANUARY 23, 2014 — DECIDED MARCH 4, 2014

Before POSNER and RIPPLE, *Circuit Judges*, and GILBERT,
*District Judge.*[*]

POSNER, *Circuit Judge*. The defendant was convicted by a
jury of being a felon in possession of a gun, in violation of 18
U.S.C. § 922(g)(1), and was sentenced to 60 months in prison.
He possessed the gun—a .40 caliber Smith & Wesson pistol,
model SW40VE—in Indiana. To convict him the government

---

[*] Of the Southern District of Illinois, sitting by designation.

had to prove that the gun had been "shipped or transported in interstate or foreign commerce." § 922(g). (We don't understand what "shipped" adds to "transported"—what is transported may not have been shipped, but what is shipped must have been transported. But no matter.) To prove this, the government presented expert testimony by a special agent of the federal Bureau of Alcohol, Tobacco, Firearms and Explosives (usually referred to just as "ATF"). The agent had worked for the ATF for 24 years and received training at the ATF's "firearms nexus school" in how to determine where guns had been manufactured. And she had testified in previous cases about the place of manufacture of particular guns. She testified in this case that the defendant's gun had been manufactured at a plant in Connecticut and so must have been transported in interstate commerce to end up in Indiana.

She had based her research on a search of an ATF database of information about the place of manufacture of guns, on other sources of such information, such as the *Blue Book of Gun Values*, www.bluebookofgunvalues.com (visited March 4, 2014), and on a phone conversation and an exchange of emails that she had had the day before the trial began with the manager of the plant that had manufactured the gun. Her initial documentary search had revealed two locations, both outside Indiana—one in Wisconsin and one in Connecticut—at which the gun could have been manufactured, and she had called the manager of one of the plants, the one in Connecticut (presumably she thought it more likely to have been the plant that manufactured the defendant's gun), to pinpoint the place of manufacture—and he had told her that it was indeed his plant, the Connecticut plant. The plant is owned not by Smith & Wesson but by a small manufac-

turer named Tri Town Precision Plastics, see "About Us," www.ttplastics.com/prof.htm (visited March 4, 2014). It may seem odd for a plastics company to be making guns. But the pistol in question is what is called a "polymer frame" gun—the frame and grip are made of plastic although the gun barrel and the gun's moving parts are made of steel. The only issue presented by the appeal is the adequacy of the evidence to prove that the gun had not been manufactured in Indiana.

The defendant's lawyer complains about the brevity and lack of detail of the expert's testimony. And brief and general it was. Really all she said was that the gun had been manufactured in Deep River, Connecticut, and that the basis for her expert opinion was "data bases I have available to me, and, also, I spoke to the manager." But the defendant's lawyer had not questioned her qualifications to give expert testimony about whether the gun had been manufactured outside Indiana, had conducted no voir dire, had not requested a *Daubert* hearing, and had limited his cross-examination of her to two pointless questions: "This investigation that you did was yesterday; is that correct?"—to which she replied that she had talked to the manager yesterday—and "when these charges were brought, you had not confirmed that the gun had actually traveled in interstate commerce; is that correct?"—to which she replied: "Not exactly. I knew that it was made at one of two locations that manufacture polymer frames for Smith & Wesson." (She meant it was a "polymer frame" gun that had been manufactured at one of two locations, not that the plastic components had been manufactured at one of those locations but that the gun had been assembled elsewhere, perhaps Indiana.) Despite the brevity of her testimony it was sufficient, especially

in the absence of meaningful cross-examination or contrary evidence, to justify a reasonable jury in finding that the gun had been manufactured outside Indiana.

The defendant argues that the expert was giving impermissible hearsay evidence in testifying to what the manager had told her. But an expert witness is permitted to rely on any evidence, whether it would be admissible or inadmissible if offered by a lay witness, that experts in the witness's area of expertise customarily rely on. The evidence the expert relies on has to provide an adequate foundation for the expert's opinion, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); *Price v. Thurmer*, 637 F.3d 831, 837–38 (7th Cir. 2011); *Ward v. Dixie National Life Ins. Co.*, 595 F.3d 164, 181–82 (4th Cir. 2010)—but that is all. Anyway the ATF agent's testimony about her conversation with Tri Town's manager was icing on the cake. The government didn't have to prove where the gun had been manufactured, only that it had not been manufactured in Indiana, a conclusion the expert had arrived at on the basis of her database searches before she talked to the manager.

Although the judge properly allowed her to testify that she'd been told by the manager that the gun had been manufactured at his plant, he wouldn't allow her to repeat what the manager had said. It's true that "the entirety of [an expert's] testimony cannot be the mere repetition of 'the out-of-court statements of others,'" *United States v. Luna*, 649 F.3d 91, 105 (1st Cir. 2011), quoting *United States v. Cormier*, 468 F.3d 63, 73 (1st Cir. 2006), and that "an expert witness may not simply summarize the out-of-court statements of others as his testimony." *United States v. Smith*, 869 F.2d 348, 355 (7th Cir. 1989). But the key words are "mere" and "simply."

An expert who parrots an out-of-court statement is not giving expert testimony; he is a ventriloquist's dummy. The expert in this case would not have been doing that in quoting what the manager had told her in their phone conversation, any more than if she had read off the locations of gun factories from her databases.

The district judge was concerned that a verbatim transcription of what the manager had said would be unduly prejudicial, a ground for exclusion under both Rule 403 and Rule 703. He said "she wouldn't be able [he meant she wouldn't be permitted]—given the last sentence of Rule 703 and the fact that the probative value in helping the jury understand the weight of the … opinion doesn't substantially outweigh the possibility of unfair prejudice … to recount the conversation with the manufacturer." We don't see, and the judge didn't explain, why a paraphrase would be less "unfairly" prejudicial than, say, a recorded quotation, which would be more reliable.

The defendant's lawyer argues finally that the manager should have been called to testify to the place of manufacture of the gun—that his testimony would have been more reliable than the expert's. But remember that the lawyer hadn't questioned the qualifications of the ATF agent to testify to the place of manufacture of the gun. He thus had tacitly conceded that a reasonable jury could, despite the absence of other evidence, conclude from the expert's testimony alone that the defendant's gun had indeed been manufactured outside of Indiana.

The agent not only works in Indiana, but her job involves determining the state in which a gun is manufactured (or in which it is not manufactured—because, to repeat, it doesn't

matter where the defendant's gun was manufactured so long as it was not manufactured in the state in which he possessed it). The manager of Tri Town Plastics' plant has a different job, the performance of which would be disrupted if he had to fly to remote locations any time a person was being prosecuted as a felon in possession of a gun believed to have been manufactured in that plant. It's no surprise that the use of expert testimony to prove that a gun has crossed state lines is the standard method of proof of that element of the crime of being a felon in possession—evidence accepted as valid by (so far as we have been able to determine) all courts. See, e.g., *United States v. Ware*, 914 F.2d 997, 1003 (7th Cir. 1990); *United States v. Lowe*, 860 F.2d 1370, 1374 (7th Cir. 1988); *United States v. Corey*, 207 F.3d 84, 92 (1st Cir. 2000); *United States v. Carter*, 270 F.3d 731, 734–35 (8th Cir. 2001).

AFFIRMED.