UNITED STATES of America,
Appellee,

v.

Alvin Scott COREY, Defendant,
Appellant.

No. 98–1893.

United States Court of Appeals,
First Circuit.

Submitted Aug. 3, 1999.

Decided March 28, 2000.

Kevin S. Nixon, by appointment of the Court, on brief for appellant.

Jay P. McCloskey, United States Attorney, and Margaret D. McGaughey, Assistant United States Attorney, on brief for appellee.

Before TORRUELLA, Chief Judge, HILL* and CYR, Senior Circuit Judges.

CYR, Senior Circuit Judge.

Alvin Scott Corey seeks to set aside his conviction for possessing a firearm as a felon, on the ground that the district court abused its discretion in admitting expert testimony that the gun Corey purchased had traveled in interstate commerce. We affirm.

## I

### BACKGROUND

In September 1997, an Easterfield model 916–A 12–gauge pump shotgun, manufactured by Smith and Wesson, was seized from Corey's Maine residence by officers of the Somerset County Sheriff's Department. In due course, Corey, a convicted felon, was indicted for possessing a firearm which had traveled in interstate commerce. *See* 18 U.S.C. §§ 922(g), 924(e). At trial, the government called Agent Michael Cooney, a firearms enforcement officer with the Bureau of Alcohol, Tobacco, and Firearms (ATF), to establish that the shotgun had been manufactured outside of Maine, and hence necessarily traveled across state lines. *Id.* As Agent Cooney's testimony is pivotal to the appeal, we describe it in detail.

### A. *The Direct Examination*

After testifying on direct examination that he had been an ATF agent for six years,[1] Agent Cooney described his official duties as "provid[ing] technical information

---

* Of the Eleventh Circuit, sitting by designation.

1. Cooney explained that before joining the ATF he had worked as a technical assistant and operations manager for two private companies licensed to import firearms, where he had "evaluated and classified and identified firearms."

regarding firearms identification, operation and design for purposes of assisting the [ATF] and the law enforcement community," "test[ing] and evaluat[ing] firearms submitted as evidence," "handl[ing] inquiries from industry and the general public regarding firearms," and "assist[ing] in maintaining the ATF firearms reference collection of approximately 5000 firearms." He had testified as an expert witness on approximately sixty-five occasions, regarding "the identification, interstate nexus, operation and design of firearms."

The defense nonetheless objected to Agent Cooney's expert qualifications on the "interstate nexus" element of 18 U.S.C. § 922(g). The district court overruled the objection.

After Agent Cooney confirmed that he had examined the Corey shotgun, the government requested "a brief description of [the gun], including the weapon type, markings, and its history." Cooney then identified the shotgun as "a Smith and Wesson, Model 916–A, twelve-gauge, pump-action shot gun, serial number 7B1279," which had been "manufactured by the Smith and Wesson firearms company of Springfield, Massachusetts." [2] The defense asserted foundation and hearsay objections as soon as the prosecutor asked Cooney whether, "[b]ased on [his] examination of the weapon and [his] research," he had formed an opinion as to the place of manufacture. At that point the district court permitted the defense to voir dire the witness.

## B. The Voir Dire by the Defense

On voir dire, Agent Cooney testified to possessing "substantial expertise in identifying firearms," having handled "[h]undreds of thousands of firearms" and examined Smith and Wesson shotguns of the type owned by Corey. Cooney stated that the principal Smith and Wesson manufac-

turing plant is situated in Massachusetts, but that other Smith and Wesson plants are located in Ohio and Maine. He stated that he had been able to determine from ATF "technical references" and "technical manuals" that the Corey shotgun was manufactured at the Smith and Wesson plant in Massachusetts. Further, he testified to having spoken with Smith and Wesson personnel at the Massachusetts plant about the Corey shotgun. Finally, when asked whether ATF reference manuals would indicate where *particular* firearms were manufactured, Agent Cooney responded that ATF possesses "in-house technical information . . . provided us by the factory, and other information we keep in-house that I use for reference."

After the defense invited him to identify the "items" he had relied upon in determining where the Corey shotgun had been manufactured, Cooney responded: "The Smith and Wesson history background file that we have on the company, and there is a notation in there about these shotguns, where they're made." Asked to explain how the ATF had compiled these files, and whether its files were comprised exclusively of information sent to the ATF by the manufacturers, Cooney explained that the files consisted of "information that we've had from speaking with the factory over the years, and in going there on tours and asking the Smith and Wesson historian, Mr. Roy Jinks, who's written historical books on Smith and Wesson." At that point, defense counsel stated: "So *a lot of this* is, basically, what people tell you, either the company tells you or the people at the company . . . or records or memos you may get from the company." (Emphasis added.) Cooney responded: "That's correct".

The defense renewed its objection, insisting that Cooney had relied "strictly [on] hearsay evidence that he gathers, people telling him where these things are

---

**2.** Cooney further testified that the weapon was operational, with a barrel-length of 30 ⅛ inches, an overall length of 50 ⅜ inches and

an original magazine capacity of five rounds, but that a "plug" had been inserted which reduced the magazine capacity to two rounds.

manufactured." The defense claimed that the perceived hearsay problem could be cured only by requiring the government "to generate the business records from these factories that show that [the shotgun] was or wasn't manufactured there." The government countered that Federal Rules of Evidence 702 and 703 permit an expert witness to formulate an opinion based on facts of a type reasonably relied upon by experts in the particular field, and that Agent Cooney had demonstrated that his methodology met that requirement.

The district court overruled the hearsay objection, on the ground that Cooney "ha[d] testified [that] he acquired this information over the years, has made studies and read a book by someone, and the history of Smith and Wesson, looked at notations that were made over the years as to where certain models come from." The court then declared itself "satisfied that the reliability of [Agent Cooney's] testimony is such that it's admissible for the purpose for which it was intended, and it's not based exclusively on hearsay that he obtained from a conversation with somebody else with regard to this weapon."

### C. *The Direct Examination Continues*

Agent Cooney testified that, in his opinion, the Corey shotgun had been manufactured by Smith and Wesson, either in Massachusetts or Ohio. Then he explained that he had attempted to rule out the Smith and Wesson plant located in Maine as the place of manufacture by phoning the Massachusetts plant on January 20, 1998, and speaking with Roy Jinks, the resident historian and the author of two books on Smith and Wesson. Jinks informed Cooney that the model shotgun owned by Corey had *never been manufactured in Maine.* Finally, Agent Cooney confirmed that he had based his expert opinion "on information that [Roy Jinks had] provided *as well as the additional research.*" (Emphasis added.)

### D. *The Cross-examination Resumes*

The defense asked Agent Cooney whether the telephone conversation with Jinks "was the extent of what you did to determine whether this [shotgun] was manufactured in Maine or not . . . ?" Cooney responded: "That was *one of . . . my procedures* in my examinations of the shotgun, *what I do with every type of weapon;* I check the technical files, our research library, if necessary call the factory." (Emphasis added.) When the defense asked whether he had telephoned Jinks because the technical files and research library had proven "inconclusive," Agent Cooney responded: "No, sir. I always like to get two or three places to check my research." In addition, Cooney reiterated that notations in the ATF files reflected that these shotguns were manufactured in Massachusetts between 1972 and 1981, and in Ohio between 1982 and 1984, at which time Smith and Wesson sold the line to a third party. Finally, Agent Cooney stated that he "called Smith and Wesson *to verify* that [these shotguns] had not been made in Houlton, Maine." (Emphasis added.)

When the defense once again asked Agent Cooney to describe the various components of the ATF research files, he explained that it was "in-house generated information that we get from the factory, from brochures, from someone speaking with the factory prior to my calling them." Finally, Cooney stated that ATF agents visit weapons factories, interview employees about new products, then include the updated information in the ATF files.

## II

### *DISCUSSION*

Citing exclusively to *United States v. Trenkler,* 61 F.3d 45, 57–61 (1st Cir.1995), and *United States v. Davis,* 571 F.2d 1354, 1356–58 (5th Cir.1978), Corey claims that the testimony given by Agent Cooney "was nothing more than his recollection of what others had told him," thus constituted inadmissible hearsay.

■ We review rulings relating to the admissibility of expert-witness testimony for clear abuses of discretion, *see General Elec. Co. v. Joiner*, 522 U.S. 136, 141, 118 S.Ct. 512, 517, 139 L.Ed.2d 508 (1997), and will not reverse unless the ruling at issue was predicated on an incorrect legal standard or we reach a "definite and firm conviction that the court made a clear error of judgment." *United States v. Shay*, 57 F.3d 126, 132 (1st Cir.1995); *see United States v. Gresham*, 118 F.3d 258, 266 (5th Cir.1997) (appellate review of rulings admitting ATF expert testimony on interstate nexus are "highly deferential"); *United States v. Ware*, 914 F.2d 997, 1002 (7th Cir.1990) (rulings admitting expert "nexus" testimony are reversed only if "manifestly erroneous").[3]

■ Under section 922(g)(1), the United States must prove beyond a reasonable doubt that the defendant possessed a "firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1); *see United States v. Bates*, 77 F.3d 1101, 1104 (8th Cir.1996) (noting that the government need prove only that "there exists 'the minimal nexus that the firearm[s] have been, *at some time*, in interstate commerce'") (emphasis added; citation omitted); *United States v. Houser*, 746 F.2d 55, 60 (D.C.Cir.1984) (same). Accordingly, the "interstate nexus" element was met provided the government demonstrated that Corey possessed the shotgun in a state other than the one in which it was manufactured. *See United States v. Coleman*, 22 F.3d 126, 130 (7th Cir.1994); *United States v. Gourley*, 835 F.2d 249, 251 (10th Cir.1987).

■ Federal Rules of Evidence 702 and 703 govern the admissibility of expert testimony. Rule 702 imposes three requirements: (1) the expert must be qualified to testify, by "knowledge, skill, experience, training, or education"; (2) the testimony must concern "scientific, technical or other specialized knowledge"; and (3) the testimony must be such as to "assist the trier of fact to understand the evidence or to determine a fact in issue." *Shay*, 57 F.3d at 132; *see Ware*, 914 F.2d at 1002.[4] Confronted with overwhelming authority to the contrary,[5] as well as Agent Cooney's extensive "firearms" expertise, appellant simply cannot prevail on a claim that the district court abused its

3. The dissent suggests that the standard of review should be less deferential than abuse-of-discretion, notwithstanding the fact that the entire legal argumentation in appellant's fifteen-page brief consists of less than two pages, in which he neither cites Evidence Rule 702 or 703, nor articulates any Sixth Amendment Confrontation Clause claim. *See United States v. Bongiorno*, 106 F.3d 1027, 1034 (1st Cir.1997) (noting that issues raised on appeal in perfunctory manner are deemed waived); *see also infra* note 6. Thus, the dissent is predicated principally upon arguments not properly before us. *See infra* notes 10 & 12.

4. Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702.

5. *See, e.g., United States v. Dunn*, 946 F.2d 615, 618 (9th Cir.1991) (holding that government may prove the interstate nexus element with expert opinion testimony); *Ware*, 914 F.2d at 1002–03 (noting that expert opinion will assist jury in determining "nexus," while leaving the ultimate issue entirely to the jury); *United States v. Gann*, 732 F.2d 714, 724 (9th Cir.1984) (same).

The dissent contends that these cases were wrongly decided, in that for Rule 702 purposes expert testimony with respect to the *place* of manufacture is not "specialized knowledge," unlike an expert opinion as to the manufacturer. None of the authorities cited by the dissent supports the novel proposition that a trial court must "deconstruct" an expert's opinion into such discrete components. Rather, under Rule 702 the only inquiry is whether the expert opinion, taken as a whole, may assist the jury in resolving an ultimate issue of fact: in this case, whether the gun traveled in interstate commerce.

discretion in ruling that the Cooney testimony met these threshold criteria.

■■ Accordingly, the admissibility determination depended only upon Evidence Rule 703, to which we now turn:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. *If of a type reasonably relied upon by experts in the particular field* in forming opinions or inferences upon the subject, the facts or data *need not be admissible in evidence.*

Fed.R.Evid. 703 (emphasis added). "The rationale for this aspect of Rule 703 is that experts in the field can be presumed to know what evidence is sufficiently trustworthy and probative to merit reliance." 29 Charles A. Wright and Victor J. Gold, *Federal Practice and Procedure* § 6273, at 311 (1997). Nevertheless, Rule 703 does require that the trial judge act as an independent "gatekeeper" to ensure that there is sufficient, credible evidence that experts do rely on the specified types of sources in formulating their opinions. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595–96, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *see also* Fed.R.Evid. 703 advisory committee's note (under Rule 703, "[a]ttention is directed to the validity of the techniques employed rather than to relatively fruitless inquiries whether hearsay is involved.").

As noted, Corey challenges the expert testimony presented by Cooney as pure hearsay, consisting of "nothing more than [Cooney's] recollection of what others had told him." Specifically, Corey contends that the challenged expert opinion—that the shotgun had been manufactured in Massachusetts, rather than Maine—was based exclusively on Cooney's conversation with Roy Jinks, the Smith and Wesson historian at the Massachusetts plant. This claim is seriously flawed as well.

■ First, Corey not only glosses over the highly deferential standard of review, *see Shay,* 57 F.3d at 132 (*clear* abuse of discretion), but proffers a highly self-serving interpretation of the challenged testimony. Agent Cooney repeatedly testified that he had based the opinion that the shotgun had been manufactured in Massachusetts not only on his telephone conversation with Smith and Wesson historian Roy Jinks, but on his own customary research into technical reference manuals and materials maintained at the ATF "research libraries," which contained information on approximately five thousand different firearms.[6] Specifically, Cooney consulted the ATF "history background file" on Smith and Wesson, which contained "a notation ... about these shotguns, [and] where they're made." The case law clearly reflects that these are types of materials commonly consulted by firearms experts.[7]

6. Although Corey intimated in his voir dire and cross-examination of Agent Cooney that the ATF files themselves would be inadmissible because all the information therein was hearsay obtained and compiled by ATF agents in the field, he has not raised this claim on appeal. Accordingly, any such claim is deemed waived, and the reliance placed upon it in the dissent is unwarranted. *See United States v. Owens,* 167 F.3d 739, 745 n. 3 (1st Cir.1999); *see also supra* note 3.

Moreover, the record cannot support such a claim. Agent Cooney testified: "We have in-house technical information that's been provided us by the factory, *and other information we keep in-house that I use for reference.*" (Emphasis added.) Thus, the only inference

the quoted testimony might support is that *some* of the ATF file information was factory-derived.

7. *See, e.g., Gresham,* 118 F.3d at 266 (ATF agents "may base[ ] their testimony on ... corporate literature and reference materials maintained by the ATF."); *United States v. Bonavia,* 927 F.2d 565, 567 n. 2 (11th Cir. 1991) ("Interstate nexus" expert may rely on examination of weapon and "consultation of reference books[.]"); *Ware,* 914 F.2d at 1003 (noting that, under Evidence Rule 703, firearms expert may "reasonably rely" on gun markings, "various *ATF publications and lists,*" and "firearms trade books, magazines, and reference materials") (emphasis added);

Moreover, Agent Cooney testified that he based the opinion, at least in part, on his own knowledge and expertise as a firearms specialist, both with the ATF and in the private sector. *See supra* note 1. Further, Cooney confirmed that he had handled "[h]undreds of thousands of firearms," and had "examined that type of shotgun [*viz.*, Corey's shotgun] before." Thus, as the district court aptly noted, Agent Cooney himself had "acquired this information over the years."[8]

Second, Agent Cooney steadfastly resisted repeated suggestions by defense counsel that he had relied *exclusively* on his telephone conversations with Smith and Wesson employees at the Massachusetts plant. Instead, Cooney emphasized, the telephone consultation "was ... *one of my procedures* in the examinations of the shotgun, what I do with every type of weapon. I check the technical files, our research library, if necessary call the factory." (Emphasis added.) Moreover, Cooney noted explicitly that he had relied on his conversation with Jinks, "*as well as the additional research.*" (Emphasis added.) Finally, asked by defense counsel

whether he had called the factory because his own research had proven "inconclusive," Cooney responded: "No, sir. I always like to get two or three places to check my research."

■ The dissent intimates that Cooney's testimony was deficient because, unlike the experts in most of the cited cases, he did not rely on the markings on the firearm, such as a proof mark, a geographical notation (*e.g.*, "Smith and Wesson, Springfield"), or a serial number.[9] We respectfully disagree.

First, although firearms experts frequently rely upon weapon markings, the decisions cited in the dissent do not remotely suggest that reliance upon gun markings is *required*, nor that the expert opinion could not have been predicated entirely upon various other reliable evidentiary foundations, such as their independent research or their professional experience and expertise. Furthermore, it is clear that in certain cases an expert witness could not gain access to gun markings. *See United States v. Gregg*, 803 F.2d

---

*United States v. Clawson*, 831 F.2d 909, 912–13 (9th Cir.1987) (holding that ATF agent's "nexus" testimony is adequately founded if predicated on "standard reference works," such as "catalogs, firearms manuals, and reference publications").

8. *See, e.g., Gresham,* 118 F.3d at 266 (ATF agents "may base[] their testimony on ... their personal experience in law enforcement."); *United States v. Horsman,* 114 F.3d 822, 824–25 (8th Cir.1997) (finding sufficient an expert's testimony on cross-examination that he was not personally aware that the defendant's gun was ever manufactured in the state where he possessed it); *United States v. Wallace,* 889 F.2d 580, 584 (5th Cir.1989) (finding no hearsay problem where ATF agent with 13 years of experience "testified that his conclusions were based on his ... training[] and experience"); *United States v. Gregg,* 803 F.2d 568, 571 (10th Cir.1986) (crediting weapon specialist's testimony as to the location of manufacture based entirely on witness's personal knowledge and experience); *United States v. Simmons,* 773 F.2d 1455, 1460–61 (4th Cir.1985) (ATF agent with nine years' experience, who had conducted thousands of firearms investigations, allowed to

testify to location of weapon's manufacture, based on his personal knowledge); *cf. United States v. Buggs,* 904 F.2d 1070, 1077 (7th Cir.1990) (permitting Indiana law-enforcement officers to testify that Smith and Wesson handguns were manufactured in Springfield, Massachusetts).

9. Even if this premise were to be accepted, the record suggests that Agent Cooney did indeed rely upon the Corey shotgun "markings." When Agent Cooney was asked to provide "a brief description of [the Corey shotgun], including the weapon type, *markings,* and its history," Cooney responded that it was "a Smith and Wesson, Model 916–A, twelve-gauge, pump-action shot gun, serial number 7B1279," "manufactured by the Smith and Wesson firearms company of Springfield, Massachusetts." As Corey has not attempted on appeal to describe the markings on the shotgun, we can only conclude that the district court fairly inferred that the expert opinion offered by Agent Cooney was predicated, at least in part, upon an examination of the shotgun markings.

568, 571 (10th Cir.1986) (noting that the government is "not required to produce an actual firearm at trial, or prove the specific manufacturer or serial number of the firearm in question"). Thus, though reliance on gun markings may well enhance an expert opinion, other sound methodologies plainly are not thereby rendered unreliable *per se.*

Second, gun markings do not necessarily constitute conclusive evidence. *See Coleman,* 22 F.3d at 131 (noting that even though geographical location is stamped on weapon, the jury might fairly infer that location there reflected was the home plant of the manufacturer, not necessarily the manufacturing site); *see also United States v. Horsman,* 114 F.3d 822, 824–25 (8th Cir.1997) (even where gun is stamped "Made in U.S.A." and "Springfield, Massachusetts," expert was asked to state his opinion, "[b]ased on research and his expertise," as to whether the weapon was manufactured in Springfield, Massachusetts).

The dissent further suggests that the government must establish nexus by more direct evidence, such as adducing trial testimony from the manufacturer, or introducing the manufacturer's internal records in evidence. We have not been able to find support for this suggestion in the case law, however. More importantly, such a regimen would reinvent the "best evidence" requirement which Evidence Rule 703 was designed to relax. *Cf. United States v. Simmons,* 773 F.2d 1455, 1460 (4th Cir.1985) (finding that Confrontation Clause was not violated by trace forms, since "[t]he policy interest in minimizing expense and delay" caused by requiring record custodians to testify at trial "must be *balanced* against the [limited] utility of the Confrontation Clause to the defendant") (emphasis added); *cf. also United*

*States v. Abbas,* 74 F.3d 506, 513 (4th Cir.1996) ("Rule 703 exists so that scientific standards may be admitted as trustworthy and reliable exceptions to the hearsay rule, thereby negating the need to parade into court each and every individual either remotely or intimately involved in the creation of a particular standard.").

Finally, appellant's total reliance upon *Davis* and *Trenkler* is misplaced.[10] In *Davis,* the government attempted to introduce ATF trace reports,[11] and the court ruled that the trace reports came within no hearsay-rule exception. *See* Fed.R.Evid. 803(6) (records of regularly conducted business); 803(8) ("public records and reports"); 803(24) (residual exception). *See Davis,* 571 F.2d at 1356–58, 1360 n. 11. *But see, e.g., Simmons,* 773 F.2d at 1459 (holding that ATF trace reports meet the "residual hearsay" exception, since they possess sufficient indicia of trustworthiness). Furthermore, *Davis did not involve Rule 703,* which specifically permits expert witnesses to rely on otherwise inadmissible hearsay of a type "reasonably relied" on by experts in the field. *See United States v. Harper,* 802 F.2d 115, 121 (5th Cir.1986).

Similarly, *Trenkler* involved an ATF report admitted pursuant to Rule 803(24), rather than as foundation for expert testimony introduced under Rule 703. *See Trenkler,* 61 F.3d at 57–62; *United States v. Maddix,* 96 F.3d 311, 315 (8th Cir.1996) (ATF agent allowed to rely on trace report in reaching opinion on "interstate commerce" element, so long as agent "testified that firearms experts customarily rely upon tracing reports to determine whether firearms have been transported across state lines") (citing Fed.R.Evid. 703). Thus, *Davis* and *Trenkler* are neither legally nor factually apposite.

10. The fifteen-page appellate brief submitted by Corey devotes but two pages to legal argumentation, and cites only *Trenkler* and *Davis.*

11. These reports enable ATF agents to request the home office to trace the serial number on

a firearm to the manufacturer. The ATF then requires the manufacturer to fill out a report detailing the gun's history, and submit it to the ATF.

## III

### *CONCLUSION*

As the record discloses that the district court acted well within its discretion in rejecting Corey's narrow contention that Agent Cooney had relied on "*nothing more* than his recollection of what others had told him," we need not consider whether the Cooney testimony would have been inadmissible under Rule 703 had he relied *exclusively* on the telephone conversation to Smith and Wesson employees. Moreover, given the categorical formulation of the argument presented by Corey on appeal, there is no need to determine whether Agent Cooney's partial reliance on the telephone conversation with Smith and Wesson employees somehow rendered his otherwise well-supported expert opinion suspect under either the Federal Rules of Evidence or the Confrontation Clause.[12] *But see Gresham*, 118 F.3d at 266 (noting that ATF agents may "testify on the basis of hearsay" and may "base[ ] their testimony on discussions with the manufacturers"); *Ware*, 914 F.2d at 1001–02 (finding no error where ATF agent also testified that he "previously contacted the manufacturer by mail and telephone"); *but see also Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir.1997) ("Where an expert's opinion is partly based on hearsay which does not meet the Rule 703 requirements, his opinion is nevertheless admissible if it is supported by

the other independent bases upon which he relied to form that opinion.").

Finally, as Corey challenges only the admissibility of the opinion testimony provided by Agent Cooney, there is no need to comment on the sufficiency of the government's evidence on the nexus element. Obviously, however, the jury remained free to discredit Agent Cooney's opinion in whole or in part.[13]

Accordingly, given the factual record before us, the district court acted well within its discretion in allowing the jury to consider the expert testimony provided by ATF Agent Michael Cooney relating to the "interstate nexus" element. *See Shay*, 57 F.3d at 132.

*Affirmed.*

TORRUELLA, Chief Judge (Dissenting).

To accommodate a minor inconvenience in the presentation of evidence by the government, the majority allows a major incursion into a criminal defendant's Sixth Amendment right to confrontation.[1] This unfortunate outcome is the result of allowing so-called "expert" testimony contrary to the requirements of Federal Rule of Evidence 702. The majority goes further astray by failing to call upon the government to make an adequate showing of reasonable reliance under Federal Rule of Evidence 703. This regrettable development is especially egregious where, as

---

12. The dissent mistakenly contends that the panel opinion rests on the assumption that Agent Cooney's "reliance on hearsay [*viz.*, the phone call] is irrelevant since [he] also relied on ATF in-house files and his personal experience." Rather, Agent Cooney's reliance on the phone call is irrelevant simply because Corey formulated his appeal so narrowly, and failed to raise the arguments the dissent regards as persuasive. *See supra* note 3.

Although we need not resolve the matter, we note also that the trial testimony—that Agent Cooney had followed the same procedure with "every type of weapon"—arguably might sustain the district court's discretionary ruling that the information Cooney used—including the phone confirmation—itself was

"of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon a subject," Fed.R.Evid. 703.

13. The district court instructed the jury that it could "accept or reject that [expert] testimony ... [and] should consider ... [t]he witness's education and experience and training, the soundness of the reasons given for the opinion, and all the other evidence in the case that might bear or impact on that testimony."

1. *See* U.S. Const. art. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him....").

here, the "experts in the particular field" are federal law enforcement officers testifying regarding a self-serving subject matter. Finally, the majority simply fails to take into account the fact that the use of hearsay evidence in a criminal case must pass constitutional muster. The Supreme Court has held that hearsay evidence must possess "particularized guarantees of trustworthiness," *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), such that "adversarial testing would be expected to add little, if anything, to [its] reliability," *Lilly v. Virginia*, 527 U.S. 116, ——, 119 S.Ct. 1887, 1894, 144 L.Ed.2d 117 (1999). I fail to see how the hearsay evidence objected to in this appeal meets this high standard, particularly when we consider that this evidence was used to establish a jurisdictional fact absent which there is no triable federal crime.

In addition, the Court's deference to the ATF is unwarranted as a matter of policy. The improper use of the tendered testimony serves no justifiable purpose. The prosecution could easily establish the interstate nexus of a firearm by introducing records subpoenaed from the manufacturer, direct testimony from the manufacturer, or even ATF trace reports. This would require only a minimal expenditure by the government and relatively little effort on the part of the prosecution. In an industry where governmental oversight is endemic and record keeping is pervasive, it should not be unduly burdensome to require that such independent evidence be produced rather than to rely, as proof of a jurisdictional element of the crime charged, on self-serving "ATF research" material.

## DISCUSSION

Alvin Scott Corey was charged with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). The statute states that:

It shall be unlawful for any person—who has been convicted in any court of,

a crime punishable by imprisonment for a term exceeding one year .... to ship or transport in interstate commerce or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped in interstate or foreign commerce.

18 U.S.C. § 922(g)(1).

At issue in this appeal is the evidence offered by the prosecution to establish the interstate nexus prong of § 922(g)(1)—"in or affecting commerce." The interstate nexus prong of § 922(g)(1) is a jurisdictional requirement. *Compare U.S. v. Blais*, 98 F.3d 647, 648-50 (1st Cir.1996) (holding facial challenge to the constitutionality of 18 U.S.C. § 922(g)(1) is hopeless as a matter of law), *with United States v. López*, 514 U.S. 549, 562, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) (holding 18 U.S.C. § 922(q) unconstitutional because it "contains no jurisdictional element which would ensure, through case-by-case inquiry, that the firearm possession in question affects interstate commerce"). It is well settled that proof that a firearm was manufactured outside the state in which the possession occurred is sufficient to support a finding that the possession was "in or affected commerce." *See, e.g., United States v. Gourley*, 835 F.2d 249, 251 (10th Cir.1987); *United States v. Johnson*, 722 F.2d 407, 410 (8th Cir.1983).

In this case, the prosecution offered the testimony of ATF Agent Michael Cooney to establish that the weapon in Corey's possession at the time of his arrest in Maine had been manufactured either in Massachusetts or Ohio, and therefore had traveled in interstate commerce. The court admitted this testimony over defendant's objection pursuant to Fed.R.Evid. 703. Rule 703 allows an expert to give opinion testimony that is based on facts or data not admitted into evidence if "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject."

## I. *Standard of Review*

We review a trial court's rulings admitting or excluding particular evidence for abuse of discretion. *See, e.g., United States v. Rivera–Gómez*, 67 F.3d 993, 997 (1st Cir.1995). Accordingly, as the majority correctly indicates, a district court's decision to admit or exclude expert testimony is generally entitled to great deference. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 138–39, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *United States v. Shay*, 57 F.3d 126, 132 (1st Cir.1995). However, unlike most appeals involving the admissibility of expert testimony, this case does not present a pure evidentiary question. Here, the trial court allowed the prosecution to rely solely on expert testimony to establish the jurisdictional element of the crime. *See López*, 514 U.S. at 562, 115 S.Ct. 1624; *Raymond*, 98 F.3d at 648–50. Under these circumstances, a less deferential standard of review is appropriate.

> [W]hile many courts make the general statement that a trial court's rulings on evidence are discretionary, it is clear that many particular evidence determinations raise a question beyond that application and may be considered questions of law. The abuse of discretion standard recited by reflex should not stop the appellate court from freely performing its own institutional role of deciding what the law is.

Steven Childress & Martha Davis, *Federal Standards of Review* § 4.02 (1992). The Fifth Circuit is in agreement and has held that expert testimony may be subject to closer examination.

> Since the adoption of the Federal Rules of Evidence in 1975, we have accorded trial courts considerable discretion in determining the admissibility of opinion evidence by experts. We have said that the discretion is "broad" and that the determination of admissibility should be sustained "unless manifestly erroneous." This deference reflects the superior opportunity of the trial judge to gauge both the competence of the expert and the extent to which his opinion would be helpful to the jury. Despite the seeming breadth of the language we have used to describe this deference, trial court rulings regarding the admission of expert testimony remain reviewable. We have not left all such decisionmaking to trial judges, nor should we.
>
> Basic policy questions that affect the very nature of a trial lie behind decisions to receive expert testimony. Under the Federal Rules of Evidence, experts not only explain evidence, but are themselves sources of evidence. These two roles, though related, are quite distinct. In deciding whether explanation by an expert will assist the jury or judge, the superior position of the trial judge over the appellate judge is apparent. By comparison, in deciding whether evidence should be allowed from this source, the trial judge draws less upon the scene and the cast immediately before him, and more upon the substantive law. To the extent that the decision to allow expert testimony as a source of evidence is significantly intertwined with the underlying substantive law, we will accord it less deference, and take a much closer look.

*In re Air Crash Disaster at New Orleans*, 795 F.2d 1230, 1233 (5th Cir.1986). Similarly, in *Salas v. Carpenter*, 980 F.2d 299 (5th Cir.1992), the Fifth Circuit held: "Expert witnesses may perform two roles: explaining evidence to a jury, and acting as the source of evidence for a jury. When the expert speaks in the latter role, we give less deference to a district court's admissibility decision." *Id.* at 305.[2]

---

**2.** Although this circuit has no similar precedent, the idea that certain evidentiary issues warrant a stricter standard of review is not novel. *See, e.g., Olsen v. Correiro*, 189 F.3d 52, 58 (1st Cir.1999) ("Here the evidentiary questions are primarily questions of law about the interpretation of the Federal Rules of Evidence, which we review de novo."); *United States v. Sposito*, 106 F.3d 1042, 1046 (1st Cir.1997) (same).

Here, Agent Cooney was the sole source of the prosecution's evidence on interstate nexus, and the question before this Court is whether the trial court's ruling admitting this testimony was proper as a matter of law. Accordingly, in line with the Fifth Circuit's reasoning in *Pan American World Airways* and *Salas*, I would hold that the trial court's decision to allow expert testimony as proof of the jurisdictional element of § 922(g)(1) is subject to a higher standard of review.

Nonetheless, my dissent does not rest on this point. I may assume, arguendo, that the applicable standard of review is abuse of discretion. Applying this standard, it is settled that the Court may only reverse appellant's conviction on the "evidentiary question" raised in this case if: (1) the district court based its decision on an incorrect legal standard; or (2) we have a "definite and firm conviction that the court made a clear error of judgment in the conclusion it reached based upon a weighing of the relevant factors." *Shay*, 57 F.3d at 132 (quoting *United States v. Benavente Gómez*, 921 F.2d 378, 384 (1st Cir.1990)).

## II. *Question of First Impression*

Whether expert testimony may be used to establish the jurisdictional requirement of § 922(g)(1) is a question of first impression in the First Circuit. However, at least seven other circuits have addressed this issue. Relying on either Fed. R. Evid 702 or 703, all have determined that expert testimony is permissible. *See, e.g., United States v. Gresham*, 118 F.3d 258, 266 (5th Cir.1997); *United States v. Maddix*, 96 F.3d 311, 315 (8th Cir.1996); *United States v. Coleman*, 22 F.3d 126, 130–31 (7th Cir. 1994); *United States v. Dunn*, 946 F.2d 615, 618 (9th Cir.1991); *United States v. Bonavia*, 927 F.2d 565, 567 n. 2 (11th Cir.1991); *United States v. Gregg*, 803 F.2d 568, 571 (10th Cir.1986); *United States v. Simmons*, 773 F.2d 1455, 1460–61 (4th Cir.1985). Unlike my colleagues in the majority, I believe that this case law is,

at least in part, contrary to the dictates of Rules 702 and 703. Further, the cases are distinguishable on the facts. More importantly, however, compliance with Rule 703 alone is not sufficient to uphold appellant's conviction in this case because the evidence does not satisfy the requirements of the Sixth Amendment. Accordingly, for the reasons stated below, I would reverse appellant's conviction.

## III. *Federal Rule of Evidence 702*

To be admissible, expert testimony must meet the requirements of Fed.R.Evid. 702. It provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed.R.Evid. 702. The rule has three requirements, but I need only address the two that are at issue in this appeal. First, the subject matter of the testimony must involve "scientific, technical, or other specialized knowledge." *Id.* Second, a witness may testify as an expert only where the court determines that "specialized knowledge will *assist the trier of fact* to understand the evidence." *Id.* (emphasis added).

In this case, the prosecution used Agent Cooney's expert testimony for three purposes: (1) to identify Smith & Wesson as the manufacturer of the shotgun in Corey's possession, (2) to identify the location of each of the Smith & Wesson manufacturing plants, and (3) to identify which of the three potential Smith & Wesson facilities actually manufactured this particular shotgun. Expert testimony regarding the identity of a firearm manufacturer is proper because it requires specialized knowledge that undoubtedly assists the jury. However, neither the location of a manufacturing plant nor the actual place a firearm is manufactured fall within the parameters of Rule 702 because neither can

fairly be described as "specialized knowledge." *Id.*

The majority reaches an opposite conclusion without analysis. The Rule 702 case law, however, does not clearly support the majority's holding. In contrast, a careful examination of the law illustrates why Agent Cooney's testimony does not constitute "specialized knowledge [that] will assist the trier of fact to understand the evidence." *Id.*

The first case to consider the admissibility of expert testimony on the interstate nexus of a firearm was *United States v. Gann,* 732 F.2d 714, 724 (9th Cir.1984). In *Gann,* the defendant argued that the district court erred in denying his objection to the testimony offered by the government's expert witness, an ATF firearms enforcement officer, as to his opinion of the location of the manufacturer of the recovered firearms and ammunition. *See id.* at 724. The defendant's principal argument was that proof of the location of a manufacturing plant does not require expert testimony.

The Ninth Circuit affirmed the conviction pursuant to Fed.R.Evid. 702. In reaching this holding, the court cited *United States v. Sickles,* 524 F.Supp. 506, 512 (D.Del.1981), *aff'd,* 688 F.2d 827 (3d Cir. 1982). In *Sickles,* the district court held that the admission of expert testimony relating to the location of the manufacturing plant was proper. The court reasoned that the expert witness relied on information on the gun itself, as well as treatises and the officer's experience. Under these circumstances, "the ultimate decision of whether the guns traveled in interstate commerce was for the jury, and [the] expert was only drawing on common sense when he opined on [the] ultimate issue." *Id.* However, the Ninth Circuit stated that the expert in *Gann* testified "not for the purpose of identifying the location of weapon and ammunition manufacturing plants, but instead for the purpose of establishing *the particular manufacturer of each of the weapons* and ammunition seized." *Gann,* 732 F.2d at 724 (emphasis added). "Based

on his expert knowledge," the agent "identified the manufacturer from characteristic shell markings and stamps." *Id.* The Ninth Circuit determined "[t]his testimony was relevant to prove that the objects had traveled in interstate commerce." *Id.*

The holding in *Gann* is correct, but the opinion—lacking any real analysis—is a source of confusion which infects this area of law. As indicated, *Gann* holds that under Rule 702 expert testimony may be used to identify the particular manufacturer of a weapon. *See id.* at 724. The language of Rule 702 clearly supports this conclusion: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence ..., a witness qualified as an expert ... may testify thereto." Fed.R.Evid. 702. There is no question that the average lay juror cannot identify the manufacturer of a firearm simply by examining the weapon. This is especially true in the case of an unmarked gun or a gun marked only with a serial number. Consequently, testimony identifying the manufacturer of a firearm will usually constitute technical or specialized knowledge that will assist the trier of fact. Rule 702 requires no more.

The problem with *Gann* is that it cites with approval *United States v. Sickles.* In *Sickles,* the district court held that expert testimony could be used to identify the *location* of a manufacturing plant. *See Sickles,* 524 F.Supp. at 512. This is an entirely different proposition, and one that has no basis in Rule 702.

The location of a manufacturing plant is a question of fact that may be established by direct evidence. The prosecution, for example, could introduce any number of corporate documents or historical records to establish the location of a corporation's manufacturing facilities. Similarly, direct testimony from the manufacturer could easily be used in the place of so-called expert testimony. Unlike the *identity* of a firearm manufacturer, the *location* of a manufacturer's facilities simply does not involve "scientific, technical, or other specialized knowledge." Fed.R.Evid. 702.

The facts of this case are illustrative. Here, Agent Cooney testified that Smith & Wesson has manufacturing facilities in Massachusetts, Ohio, and Maine. Massachusetts, Ohio, and Maine are not "scientific, technical, or other specialized knowledge." *Id.* Compare, for example, testimony that Smith & Wesson has a manufacturing plant in Massachusetts with expert testimony involving aircraft maintenance,[3] accounting practices,[4] banking customs,[5] corporate management,[6] farm production,[7] motion picture distribution,[8] securities investments,[9] or the meaning of criminal jargon.[10] By comparison, the location of a Smith & Wesson production plant is an ordinary fact that is subject to the presentation of evidence in the same way as any other disputed fact. Admittedly, a juror is not likely to have independent knowledge of where Smith & Wesson has production facilities, but this alone does not make the location of the plants technical or specialized. If it did, Rule 702 would be meaningless, and expert testimony could be used to establish essentially any fact in dispute in every case.

In addition, Rule 702 requires that the testimony *"assist the trier of fact."* Fed. R.Evid. 702 (emphasis added). Here, an ordinary juror is abundantly qualified to properly assess direct evidence of a physical location. It is patently disingenuous to suggest that the trier of fact requires the assistance of expert testimony to understand basic corporate documents or direct testimony from a manufacturer indicating where the company has manufacturing facilities. This is a matter easily evaluated by laymen within the realm of their common knowledge and experience.

Similarly, the *actual place of manufacture* (i.e., where the shotgun in Corey's possession was in fact manufactured) does not fall within the standard of Rule 702.[11] A juror does not require expert testimony to understand corporate records indicating that a firearm was manufactured in either Massachusetts or Ohio, but not Maine. This is a fact that people of common understanding can easily comprehend. Consequently, contrary to the majority's indication, there is overwhelming authority that this is *not* a proper subject for expert testimony. *See* Fed.R.Evid. 702 advisory committee's note ("There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.").[12]

Nonetheless, the few cases that have addressed this question have determined that expert testimony regarding the interstate nexus of a firearm is permissible under Rule 702. *See United States v. Dunn,* 946 F.2d 615, 618 (9th Cir.1991);

**3.** *See, e.g., Davis v. American Jet Leasing,* 864 F.2d 612, 615 (8th Cir.1988).

**4.** *See, e.g., United States v. Systems Architects,* 757 F.2d 373, 377 (1st Cir.1985).

**5.** *See, e.g., First Nat'l State Bank v. Reliance Elec. Co.,* 668 F.2d 725, 731 (3d Cir.1981).

**6.** *See, e.g., Bauman v. Centex Corp.,* 611 F.2d 1115, 1120–21 (5th Cir.1980).

**7.** *See, e.g., Federal Crop Ins. Corp. v. Hester,* 765 F.2d 723, 728 (8th Cir.1985).

**8.** *See, e.g., Wilder Enters. v. Allied Artists Pictures,* 632 F.2d 1135, 1143 (4th Cir.1980).

**9.** *See, e.g., Shad v. Dean Witter Reynolds,* 799 F.2d 525, 527–30 (9th Cir.1986).

**10.** *See, e.g., United States v. Echeverri,* 982 F.2d 675, 680 (1st Cir.1993); *United States v. Castiello,* 915 F.2d 1, 3 (1st Cir.1990).

**11.** Although the distinction between the location of a manufacturer's facilities and the "actual place of manufacturer" is normally incidental, it is the critical issue in a case, such as this one, where the manufacturer has facilities both in the state of possession and outside of it.

**12.** *See also Ruiz–Troche v. Pepsi Cola of Puerto Rico Bottling Co.,* 161 F.3d 77, 81 (1st Cir.1998) ("To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant, *see* Fed.R.Evid. 402, but also in the incremental sense that the expert's proposed opinion, if admitted,

*United States v. Ware,* 914 F.2d 997, 1002 (7th Cir.1990). These cases, however, uniformly rely on *Gann,* erroneously citing it as authority for rejecting *all* Rule 702 challenges to expert testimony on this issue. *See id.* The majority, in turn, finds sufficient support in these cases to reject appellant's Rule 702 challenge to his conviction without analysis. I respectfully believe this determination is erroneous.

Quite simply, as indicated above, the language of Rule 702 supports appellant's argument and belies the holding of the Court.[13]

## IV. *Federal Rule of Evidence 703*

I also disagree with my colleagues' treatment of Rule 703. Rule 703 provides:

> The facts or data in the particular case upon which an expert bases an opinion

likely would assist the trier of fact to understand or determine a fact in issue."); *Ed Peters Jewelry Co. v. C & J Jewelry Co.,* 124 F.3d 252, 259 (1st Cir.1997) (holding trial court "must perform its gatekeeping function, by assessing whether the testimony 'will assist the trier of fact to understand the evidence or to determine a fact in issue' " (quoting Fed.R.Evid. 702)); *United States v. Montas,* 41 F.3d 775, 784 (1st Cir.1994) ("Expert testimony on a subject that is well within the bounds of a jury's ordinary experience generally has little probative value."); *United States v. Rahm,* 993 F.2d 1405, 1413 (9th Cir.1993) ("Our [Rule 702] inquiry has generally focused upon whether the expert testimony improperly addresses matters within the understanding of the average juror.... [T]his circuit continues to guard—perhaps too jealously—from expert elucidation, areas believed to be within the jurors' common understanding."); *United States v. Sepúlveda,* 15 F.3d 1161, 1183 (1st Cir.1993) ("[T]he trial judge performs a gatekeeping function, determining whether it is reasonably likely that the expert possesses specialized knowledge which will assist the trier better to understand a fact in issue."); *United States v. Cruz,* 981 F.2d 659, 664 (2d Cir.1992) (holding expert testimony is not admissible unless subject matter has "esoteric aspects reasonably perceived as beyond the ken of the jury"); *United States v. Lamattina,* 889 F.2d 1191, 1194 (1st Cir.1989) (expert testimony is inadmissible where jury is able to determine issues "to the best possible degree"); *Andrews v. Metro North Commuter R. Co.,* 882 F.2d 705, 708 (2d Cir.1989) ("For an expert's testimony to be admissible under [Rule 702] it must be directed to matters within the witness' scientific, technical, or specialized knowledge and not to lay matters which a jury is capable of understanding and deciding without the expert's help."); *United States v. Lundy,* 809 F.2d 392, 395 (7th Cir. 1987) ("Courts agree that ·it is improper to permit an expert to testify regarding facts that people of common understanding can easily comprehend." (citing cases)); *Scott v. Sears, Roebuck & Co.,* 789 F.2d 1052, 1055 (4th Cir.1986) ("Rule 702 makes inadmissible

expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance."); 1 John W. Strong et al., *McCormick On Evidence* § 13 (1999) ("To warrant the use of expert testimony, the proponent must establish at least two general elements. First, traditionally the subject of the inference must be so distinctively related to a science, profession, business, or occupation as to be beyond the ken of lay persons.... Second, the witness must have sufficient skill or knowledge related to the pertinent field or calling that his inference will probably aid the trier in the search for truth."); 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6274 (1997) ("The most important factor in determining whether expert testimony will 'assist [the trier of fact]' is the jury's need for expert testimony to accurately determine the facts. Thus, expert testimony assists where it relates to esoteric matters beyond the experience of most lay people. Similarly, experts are needed where the testimony concerns complex matters that challenge the comprehension of lay people. Expert testimony may also be helpful where the subject is simply confusing.... On the other hand, expert testimony does not assist where the jury has no need @for an opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic. For the same reason, expert testimony may not be helpful where there are other means to put the jury in a position to accurately decide the facts.").

**13.** The majority takes issue with my Rule 702 analysis, stating that a trial court need not deconstruct an expert's testimony into discrete components. *See supra* note 5. The indication is that opinion testimony on interstate nexus may be proper even if expert testimony on the place of manufacture is not. I respectfully fail to see how this can be. First, it is settled law that a trial court must perform a gatekeeping function to ensure that proposed expert testimony complies with the

or inference may be those perceived by or made known to the expert at or before the hearing. If of a type *reasonably relied upon* by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Fed.R.Evid. 703 (emphasis added). Accordingly, the proponent of expert testimony must make two showings under Rule 703. First, the party offering the expert testimony must show that the expert relied on facts or data of the type relied upon by experts in the field. Second, the party must show that this reliance was reasonable.[14] The latter is the critical element in this case.

Here, we must decide whether Agent Cooney's testimony was based on facts or data of a type *reasonably relied upon* by experts in the field in forming an opinion as to the interstate nexus of a firearm. Appellant argues that the trial court erred in admitting Agent Cooney's testimony because his opinion was based entirely on hearsay evidence. The majority concludes that Agent Cooney's testimony was proper because he relied not only on a phone call to Smith & Wesson historian Roy Jinks, but also on ATF "in-house technical information" and his own "knowledge and experience." I respectfully disagree with this analysis.

### A. The Evidence Relied on by Agent Cooney Was Not Reasonable under Rule 703

As stated, Agent Cooney telephoned Smith & Wesson historian Roy Jinks to

---

Federal Rules of Evidence. *See, e.g., Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591–93, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *McDonald v. Fed. Lab., Inc.*, 724 F.2d 243, 248 (1st Cir.1984). Second, I am not aware of a single case that states an expert once anointed as such may testify to subjects that do not meet the requirements of Rule 702. Third, and most important, the interstate nexus of a firearm generally requires knowledge of two things: (1) the place of manufacture, and (2) the state of possession. If, as I have argued, neither the place of manufacture nor the state of possession constitutes specialized knowledge, and therefore is not proper Rule 702 testimony, then I fail to see how testimony on the ultimate issue of fact, interstate nexus, fairs better.

**14.** *See, e.g., In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 748 (3d Cir.1994) ("It is the judge who makes the determination of reasonable reliance, and ... for the judge to make the factual determination under Rule 104(a) that an expert is basing his or her opinion on a type of data reasonably relied upon by experts, the judge must conduct an independent evaluation into reasonableness."); *United States v. Locascio*, 6 F.3d 924, 938 (2d Cir.1993) ("We agree that a district court is not bound to accept expert testimony based on questionable data simply because other experts use such data in the field."); *University of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200, 1218 (1st Cir.1993) ("Rules 703 and 705 do not afford automatic entitlements to proponents of expert testimony.

Rule 703 requires the trial court to give 'careful consideration' to any inadmissible facts upon which the expert will rely, in order to determine whether reliance is 'reasonable.' "); *Slaughter v. Southern Talc Co.*, 919 F.2d 304, 306–07 (5th Cir.1990) ("Federal Rule of Evidence 703 requires courts to examine the reliability of an expert's sources to determine whether they satisfy the threshold established by the rule."); *Head v. Lithonia Corp.*, 881 F.2d 941, 944 (10th Cir.1989) ("Implicit in [Rule 703] is the court's [obligation] to make a preliminary determination pursuant to Rule 104(a) whether the particular underlying data is of a kind that is reasonably relied upon by experts in the particular field in reaching conclusions.... Thus, the district court may not abdicate its independent responsibilities to decide if the bases meet minimum standards of reliability as a condition of admissibility." (internal quotes omitted)); *Almonte v. National Union Fire Ins. Co.*, 787 F.2d 763, 770 (1st Cir.1986) (trial court erred in failing to conduct more extensive investigation into whether police expert's reliance on facts or data was reasonable); *Soden v. Freightliner Corp.*, 714 F.2d 498, 505 (5th Cir.1983) ("Though courts have afforded experts a wide latitude in picking and choosing the sources on which to base opinions, Rule 703 nonetheless requires courts to examine the reliability of those sources."); *Baumholser v. Amax Coal Co.*, 630 F.2d 550, 553 (7th Cir.1980) ("It is for the trial court to determine, in the exercise of its discretion, whether the expert's sources of information are sufficiently reliable to warrant reception of the opinion.").

inquire about the origin of appellant's shotgun. The majority believes that this reliance on hearsay is irrelevant since Agent Cooney also relied on ATF in-house technical files and his personal experience. I disagree and would hold that the government's evidence of interstate nexus is insufficient pursuant to Rule 703.

While the majority declines to reach the propriety of the telephone call, it seems intuitive that information gleaned from a phone call placed by an investigating officer *after criminal proceedings have begun* does not bear objective earmarks of reasonable reliability. For example, the information provided by Mr. Jinks was not published, documented, or subject to peer review. Further, we have no way of knowing on what basis Mr. Jinks determined that the Smith & Wesson shotgun in appellant's possession was not manufactured in Maine. At best, the testimony regarding the telephone conversation amounts to a summary of another expert's opinion. This alone is not sufficient for admission under Rule 703. *See, e.g., TK–7 Corp. v. Estate of Barbouti,* 993 F.2d 722, 732 (10th Cir.1993) (expert testimony was inadmissible under Rule 703 "where the expert failed to demonstrate any basis for concluding that another individual's opinion ... was reliable, other than the fact that it was the opinion of someone he believed to be an expert"); *United States v. Smith,* 869 F.2d 348, 355 (7th Cir.1989) ("[A]n expert witness may not simply summarize the out-of-court statements of others as his testimony."); *see also* 29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6274 (1997).

Accordingly, we are left with the ATF in-house files and the agent's personal experience. Admittedly, both may be relevant factors in a Rule 703 analysis. However, I am aware of no case where the expert relied *only* on ATF reference materials and his personal experience. In most cases that indicate a reliance on "personal research," the expert testimony was also based on an examination of the weapon.

*See United States v. Gresham,* 118 F.3d 258, 266 (5th Cir.1997); *United States v. Horsman,* 114 F.3d 822, 826 (8th Cir.1997); *United States v. Maddix,* 96 F.3d 311, 315 (8th Cir.1996); *United States v. Bonavia,* 927 F.2d 565, 567 n. 2 (11th Cir.1991); *United States v. Ware,* 914 F.2d 997, 1002 (7th Cir.1990); *United States v. Wallace,* 889 F.2d 580, 584 (5th Cir.1989). More important, the research itself included "corporate literature," *Gresham,* 118 F.3d at 266, "reference books," *Bonavia,* 927 F.2d at 567 n. 2, "various firearms trade books, magazines, and reference materials," *Ware,* 914 F.2d at 1002, "ATF *publications,*" *id.* (emphasis added), "catalogs, firearms manuals, and reference publications," *United States v. Clawson,* 831 F.2d 909, 912 (9th Cir.1987), or at the very least an ATF trace report, *see Maddix,* 96 F.3d at 315.

In contrast to these traditional and well-accepted forms of research, Agent Cooney relied on *in-house material* generated by the ATF itself. Cooney refers to these materials as ATF "research libraries" and "technical files." Removing this semantic gloss, the underlying picture is troubling: a federal law enforcement officer relied on internal, non-published government files to establish an element of appellant's crime. In my opinion, this cannot amount to reasonable reliance by definition and therefore violates Rule 703. It is difficult to imagine that in any other context the Court would allow an agent of one party to rely on that party's own self-serving, internal documents as a basis for his so-called expert opinion.

Further, when asked how the ATF in-house information was generated, Agent Cooney explained that ATF research materials are compiled by ATF agents through interviews with firearm manufacturers. At one point, for example, he states:

That's in-house generated information that we get from the factory, from brochures, from someone speaking with the factory prior to my calling them.

In fact, when defense counsel asked whether the information relied on by Agent Cooney depended on conversations with Smith & Wesson employees, Cooney replied, "[h]ow else would I find that information out?" Consequently, appellant's contention that Agent Cooney's testimony was based entirely on hearsay is absolutely correct. As indicated, Rule 703 requires reasonable reliance, and I do not believe that a law enforcement officer may reasonably rely on hearsay evidence to establish an element of a crime simply because he is deemed an expert witness.

Similarly, Agent Cooney's purported reliance on personal experience is not persuasive. Three courts have allowed firearms experts to rely solely on their personal experience in formulating an opinion as to interstate nexus. *See United States v. Buggs*, 904 F.2d 1070, 1077 (7th Cir.1990); *Gregg*, 803 F.2d at 571; *Simmons*, 773 F.2d at 1460–61. These cases, however, are premised on very different facts than those contained in this case. Specifically, in each of these cases the expert testimony was limited to a statement that there were *no manufacturing facilities* in the state of possession. *See Buggs*, 904 F.2d at 1077 (ATF agent testified that "Smith & Wesson handguns are manufactured in Springfield, Massachusetts. He also testified that a .357 magnum is a revolver and *no revolvers are manufactured* within Indiana's bor-

ders." (emphasis added)); *Gregg*, 803 F.2d at 571 (weapon specialist testified "that there were no major gun manufacturers in State of Oklahoma"); *Simmons*, 773 F.2d at 1460–61 (ATF agent testified "based on his personal knowledge and experience, the Savage Arms Co. had never had a manufacturing plant in Maryland."). In other words, courts have allowed firearms experts to rely on their personal experience only where based on the brand it was a physical impossibility that the weapon was manufactured in the state of possession. Here, Smith & Wesson has a manufacturing plant in Maine, the state of possession. Under these circumstances, it is axiomatic that a higher degree of proof should be required to opine that appellant's Smith & Wesson firearm was not manufactured at the Smith & Wesson plant in Maine.

## B. Agent Cooney Did Not Rely on Distinctive Markings on the Firearm

The majority overlooks the fact that Agent Cooney did not rely on distinctive markings on Corey's shotgun in formulating his opinion.[15] An overwhelming majority of the reported cases indicate that markings on a firearm are a central factor in a Rule 703 analysis. *See, e.g., Gresham*, 118 F.3d at 266; *Horsman*, 114 F.3d at 824; *Maddix*, 96 F.3d at 315; *Coleman*, 22

---

15. I disagree with the majority's reading of the record on this point. *See supra* note 9. On direct examination, Agent Cooney was asked to provide "a brief description of Exhibit 7 [the Corey shotgun], including the weapon type, markings, and its history." Agent Cooney replied:

> Exhibit 7 is a Smith & Wesson, Model 916–A, 12–gauge, pump-action shotgun, serial number 7B1279. Exhibit 7 was manufactured by the Smith & Wesson firearms company *of* Springfield, Massachusetts. It is, by design, a pump-action shotgun. My examination revealed that it has a barrel length of approximately 30 and ⅛ inches, and an overall length of approximately 50 and ⅜ inches.

(Emphasis added). As I read this passage, the only marking identified by Agent Cooney

was the serial number. Moreover, although this passage identifies the manufacturer of the shotgun, nothing here identifies the place of manufacture. (Smith & Wesson is headquartered in Springfield, Massachusetts, but the company has manufacturing facilities in Maine, Ohio, and Massachusetts.) More important, however, Agent Cooney was subsequently asked numerous times on what basis he formulated his opinion on interstate nexus. He testified that he relied on a telephone call to Smith & Wesson, ATF research materials, and his personal experience. He did not indicate any reliance on markings on the shotgun. Accordingly, I respectfully suggest that there is nothing in the record that fairly indicates that Agent Cooney relied on distinctive markings on the firearm in formulating his opinion on interstate nexus.

F.3d at 130–31; *Ware,* 914 F.2d at 1002; *Wallace,* 889 F.2d at 584; *United States v. Merritt,* 882 F.2d 916, 920 (5th Cir.1989); *United States v. Gourley,* 835 F.2d 249, 251 (10th Cir.1987); *United States v. Harper,* 802 F.2d 115, 121 (5th Cir.1986). The importance of distinctive markings on a firearm is self evident: markings are non-hearsay evidence that allow an expert to identify the manufacturer. Once the manufacturer is identified, the expert can easily determine the location of the manufacturing facilities. Typically these facilities are outside of the state of possession, and therefore the expert can readily opine that the weapon traveled in interstate commerce.

*United States v. Maddix* is illustrative. On March 11, 1994 Maddix was arrested in Kansas City, Missouri and charged with being a felon in possession of a firearm in violation of § 922(g)(1). *See* 96 F.3d at 313. At trial, an ATF special agent testified that the revolver in Maddix's possession had been manufactured in California, shipped to dealers in Arkansas, and then eventually sold in Missouri. *See id.* at 315. Based on this testimony, Maddix was convicted as charged.

On appeal, Maddix argued that the district court abused its discretion in admitting hearsay evidence to establish the jurisdictional element of § 922(g)(1). The Eighth Circuit, however, affirmed. The court reasoned that the special agent testified as a firearms expert and that his opinion properly relied on a tracing report and markings on the weapon. The court stated, "firearms experts customarily rely upon tracing reports to determine whether firearms have been transported across state lines." *Id.* at 315 (citing Fed.R.Evid. 703). Further, "[h]is opinion was also based upon evidence other than the tracing report, that is, the identity of the manufacturer (Clerke Technicorp) and the place of manufacture (Santa Monica, California), *both of which were stamped on the revolv-*

er (the revolver had been admitted into evidence as exhibit # A–1), and the fact that the revolver had been seized in Missouri." *Id.* at 315–16 (emphasis added).

Similarly, in *Gresham* the defendant was found guilty of possession of a firearm by a convicted felon. *See* 118 F.3d at 258. On appeal, defendant claimed that the district court abused its discretion by permitting the government to offer hearsay testimony in order to satisfy the jurisdictional nexus required by § 922(g)(1). The Fifth Circuit affirmed the conviction, stating, "[p]roof of the interstate nexus to the firearm may be based upon expert testimony by a law enforcement officer." *Id.* at 266 (citing *United States v. Privett,* 68 F.3d 101, 104 (5th Cir.1995)). The court reasoned, "it is axiomatic that expert opinions may be based on facts or data of a type reasonably relied upon by experts in a particular field, even if the sources are not admissible evidence." *Id.* (citing Fed.R.Evid. 703).

At trial, the prosecution offered the testimony of two ATF special agents. The agents testified that the component parts of the pipe bomb had been manufactured outside Texas and had traveled in interstate commerce.[16] The agents, who were admitted as experts, based their testimony on studies of *distinctive markings on the products,* corporate literature and reference materials maintained by the ATF, discussions with the manufacturers, and their personal experience in law enforcement. *See id.* After reviewing these facts, the Fifth Circuit stated, "[w]e have regularly upheld such expert testimony against hearsay challenges, holding that expert testimony is admissible to satisfy the jurisdictional nexus required by § 922(g)(1)." *Id.*

The *Gresham* court cited three prior Fifth Circuit opinions, noting that the expert testimony had relied, in whole or part, on markings on the weapons in each of these cases. *See Wallace,* 889 F.2d at 584;

---

**16.** The court determined that the component parts of a "pipe bomb" constituted "firearms" for purposes of § 922(g)(1). *See* 118 F.3d at 265.

*Merritt,* 882 F.2d at 920; *Harper,* 802 F.2d at 121. The court determined, "[i]n the instant case, the ATF experts relied on similar information." *Gresham,* 118 F.3d at 266. Therefore, "the district court did not abuse its discretion in admitting the expert testimony to satisfy the jurisdictional nexus element." *Id.* at 267.

Here, no distinctive markings were testified to regarding the firearm in question.

### C. The Facts of This Case are Unique

The majority also fails to acknowledge that the facts of this case are absolutely unique. No other case has considered what evidence is appropriate to establish interstate nexus pursuant to Rule 703 where the firearms manufacturer has manufacturing facilities in the state of possession. Obviously, what constitutes reasonable reliance in one context does not necessarily apply to an entirely different set of facts.

> Under any approach, the "reasonably relied upon" standard necessarily requires focus on the specific facts and circumstances surrounding the case, the precise opinion offered, and the particulars of the basis for that opinion. As a consequence, it is not possible to identify bases for expert opinion that are always reasonably reliable. Thus, precedent on the questions raised by Rule 703 may be of dubious value.

29 Charles Alan Wright & Victor James Gold, *Federal Practice and Procedure* § 6274 (1997). For this reason as well, I believe that the majority's less than critical treatment of the case law is less than satisfying.

### D. Policy Considerations

Finally, as a matter of policy, the Court is setting a dangerous precedent by allowing a party to rely on its own hearsay compilation as a basis for expert opinion. In my mind, there is absolutely no justification for the Court's reflexive deference to the ATF on the issues presented by this appeal. Accordingly, for the reasons stated, I would hold that Agent Cooney's testimony is not based on facts or data *reasonably* relied on by experts in the field in formulating an opinion as to interstate nexus. *See* Fed.R.Evid. 703.

### V. *The Sixth Amendment*

The failure of Agent Cooney's testimony to meet the requirements of Fed.R.Evid. 703 is sufficient for a finding of reversible error. However, my concern runs deeper than the improper adherence to the technical intricacies of the Federal Rules of Evidence. Specifically, this is a criminal case and the defendant enjoys the protection of the Sixth Amendment's Confrontation Clause.

Where an expert relies on non-hearsay evidence, such as markings on the weapon, the evidence need only comply with Rule 703. However, where, as here, the testimony offered by the prosecution purports to rely on hearsay, the evidence must comply both with Rule 703 and the Confrontation Clause. The Seventh Circuit explained:

> In criminal cases, a court's inquiry under Rule 703 must go beyond finding that hearsay relied on by an expert meets these standards. An expert's testimony that was based entirely on hearsay reports, while it might satisfy Rule 703, would nevertheless violate a defendant's constitutional right to confront adverse witnesses.

*United States v. Lawson,* 653 F.2d 299, 302 (7th Cir.1981).

The Confrontation Clause gives a criminal defendant the right "to be confronted with the witnesses against him." U.S. Cont. art. VI. The central concern of the Confrontation Clause is "to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig,* 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). Accordingly, pur-

suant to the Confrontation Clause, a defendant is "guarantee[d] an opportunity for effective cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 678–679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

> The opportunity for cross-examination, protected by the Confrontation Clause, is critical for ensuring the integrity of the fact-finding process. Cross-examination is the principle means by which the believability of a witness and the truth of his testimony are tested.

*Kentucky v. Stincer*, 482 U.S. 730, 736, 107 S.Ct. 2658, 96 L.Ed.2d 631 (1987) (quoting *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). In light of a defendant's right to cross-examination, out-of-court statements are admissible in a criminal trial only under limited circumstances.

Specifically, the Supreme Court has held that the Confrontation Clause is violated where an out-of-court statement of a witness does not bear adequate "indicia of reliability." *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). The Supreme Court has stated that "indicia of reliability" can be demonstrated in two ways. Where the evidence falls within "a firmly rooted hearsay exception," reliability can be inferred. *Id.* All other cases require "a showing of particularized guarantees of trustworthiness," *id.*, such that "adversarial testing would be expected to add little, if anything, to their reliability," *Lilly v. Virginia*, 527 U.S. 116, ——, 119 S.Ct. 1887, 1894, 144 L.Ed.2d 117 (1999). Further, the "particularized guarantees of trustworthiness" must be "drawn from the totality of circumstances that surround the making of the statement and that render the declarant particularly worthy of belief." *Idaho v. Wright*, 497 U.S. 805, 820, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990).

*Roberts* and *Wright* are illustrative. In *Roberts*, the Supreme Court held that an out-of-court statement by an unavailable witness was sufficiently reliable to be admitted at trial, consistent with the Confrontation Clause, because defense counsel had engaged in full cross-examination of the witness at the preliminary hearing where the statement was made. *See* 448 U.S. at 70–73, 100 S.Ct. 2531. In contrast, in *Wright* the Supreme Court held that the hearsay statements of a child sexual abuse victim lacked the particularized guarantees of trustworthiness required for admission under the Confrontation Clause. *See* 497 U.S. at 826, 110 S.Ct. 3139. The Court focused on the "presumptive unreliability of out-of-court statements" and on the "suggestive manner" in which the child's doctor conducted the interview. *Id.*

Here, even a cursory examination of the record shows that there are no "indicia of reliability" sufficient to uphold the admission of Agent Cooney's testimony regarding the interstate nexus prong of § 922(g)(1). *See Roberts*, 448 U.S. at 66, 100 S.Ct. 2531. First, Agent Cooney offered the out-of-court statements of Smith & Wesson historian Roy Jinks as substantive evidence against the defendant. These statements were made in a telephonic interview that was conducted by the government without procedural safeguards *after criminal proceedings had begun*. Given the "totality of the circumstances," there is no reason to believe that these out-of-court statements offered by the prosecution to prove interstate nexus are "particularly worthy of belief." *Wright*, 497 U.S. at 820, 827, 110 S.Ct. 3139. Second, Agent Cooney relied on in-house ATF files. As I already indicated, there is little difference, from a hearsay standpoint, between the ATF's internal reference materials, which are compiled by ATF agents interviewing firearm manufacturers in the field, and a telephone call to the manufacturer. These records have not been subjected to public scrutiny, and they are not likely to be available pursuant to the Freedom of Information Act. *See* 5 U.S.C. § 552(c)(7). Given the presumption of inadmissibility accorded accusatory hearsay statements not admitted pursuant to a firmly rooted hearsay exception, *see id.* (citing *Lee v. Illinois*, 476 U.S. 530, 543, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986)), the government's evidence of interstate nexus does not possess "particularized guaran-

tees of trustworthiness" sufficient to uphold appellant's conviction.

The Smith & Wesson employees, in being saved an appearance before the jury, were rendered immune from cross-examination. The prosecution was thereby allowed to establish a jurisdictional fact by simply producing a witness who did nothing but summarize out-of-court statements made by others. Consequently, the defendant had no way to test the veracity of the evidence offered against him. This use of hearsay evidence, in addition to failing the requirements of Fed.R.Evid. 703, denied appellant his constitutional right to confront adverse witnesses. *See Lawson*, 653 F.2d at 302.

In a criminal case a court's inquiry under Rule 703 must go beyond a finding that the hearsay relied on by an expert meets the standards of the Federal Rules of Evidence. If this Court is willing to allow a government agency to rely on its own internal manuals and post-indictment telephone calls to establish a basic element of a crime, simply by clothing the testifying agent with the unwarranted aura of "expert," then, in my opinion, the plain language of the Confrontation Clause has been emasculated beyond recognition. Requiring the government to produce non-hearsay evidence on the jurisdictional requirement of § 922(g)(1) is hardly a major burden on the prosecution. Particularly where, as here, the weapon in question is stamped with a serial number, it is a minor bureaucratic inconvenience to establish where the weapon was manufactured, by requiring the subpoenaing of records from the manufacturer. The resources of the government can hardly be strained by requiring such direct proof of interstate nexus.

## CONCLUSION

For the reasons stated above, I respectively **dissent**.